THE MINISTER, ELDERS AND DEACONS OF THE REFORMED PROTESTANT DUTCH CHURCH IN GARDEN STREET IN THE CITY OF NEW YORK, Respondent, *v.* MADISON AVENUE BUILDING COMPANY, INCORPORATED, Appellant.

Real property — restrictive covenants — apartment house — covenant that grantee and his successors in title will not use property for any purpose except private dwellings — when term "dwelling house" broad enough to include and permit erection of apartment house.

1. Where a covenant in plain and complete language limits the use of real estate to the erection of a certain and general class of buildings by reference to their fundamental purposes, as dwelling houses, the law will not still further extend the restriction by enforcing it against all but a limited variety of such buildings which hap-

pened to be in use when the covenant was made. The general rule of law applicable to restricting the use of the property conveyed is against such a construction, since it is required to be construed strictly against, rather than liberally in favor of, the grantor.

2. A clause in a deed provided that " neither of them [said parties and owners] nor his heirs and assigns shall or will at any time hereafter erect or cause to be erected upon any of the lots owned by them respectively or any part of the same any building or erection other than brick or stone dwelling houses of at least two stories in height and with the ordinary yard appurtenances to dwelling houses and except churches and stables of brick or stone for private dwellings, and, further, that they will not hereafter erect or permit upon such lots or any part of the same any livery stable, slaughter houses," etc. *Held*, that the term "dwelling house," used in this covenant, is broad enough to include and permit the erection of an apartment house.

3. The court will not regard the possibility of other actions as a reason for refusing specific performance when a judgment is to be rendered which under the ordinary rule of *stare decisis* will control the determination of subsequent suits started for the same purpose.

*Minister, etc., of Reformed Protestant Dutch Church* v. *Madison Ave. Bldg. Co.*, 163 App. Div. 359, affirmed.

(Argued February 1, 1915; decided February 25, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered August 27, 1914, in favor of plaintiff upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

The nature of the controversy and the facts, so far as material, are stated in the opinion.

*John M. Stoddard* for appellant. The words "dwelling houses" as used in the restriction agreement must be given that interpretation intended by the parties using them at that time, rather than the broad definition to be found in dictionaries and accepted by courts in defining the same words when used in other days and generations. (*Clark* v. *Devoe*, 124 N. Y. 120; *Maloney* v. *I. B. Co.*, 173 N. Y. 303; Page on Cont. § 1123; *Hoffman* v.

*Æ. F. Ins. Co.*, 32 N. Y. 405; *White* v. *Collins B. & C. Co.*, 82 App. Div. 1; *Sanders* v. *Dixon*, 89 S. W. Rep. 577; *Schenck* v. *Campbell*, 11 Abb. Pr. 292; *Batchelor* v. *Hinkle*, 210 N. Y. 243; *Decker* v. *Furniss*, 14 N. Y. 611.) The practical construction given to the contract by the parties and by their successors in interest should be controlling upon its present interpretation. (*Carthage T. P. Mills* v. *Vil. of Carthage*, 200 N. Y. 1; *City of New York* v. *New York City Ry. Co.*, 193 N. Y. 543; *Meyer* v. *Levy*, 156 App. Div. 745; *Woolsey* v. *Funke*, 121 N. Y. 87; *Ins. Co.* v. *Dutcher*, 95 U. S. 269.) As between a vendor and vendee the court will not resolve a doubtful question of title in the absence of all of the parties directly interested in the determination of that question. (*Fleming* v. *Burnham*, 100 N. Y. 1; *N. Y. S. & T. Co.* v. *Schoenberg*, 87 App. Div. 262; *Heller* v. *Cohen*, 154 N. Y. 300; *Wanser* v. *De Nyse*, 188 N. Y. 378; *Brokaw* v. *Duffy*, 165 N. Y. 391; *Holley* v. *Hirsch*, 135 N. Y. 590; *Irving* v. *Campbell*, 121 N. Y. 353.)

*Edmund L. Baylies* and *Edwin D. Bechtel* for Murray Hill Association, intervening. Private dwelling houses are the only permissible dwelling houses within the meaning of the Murray Hill restrictive agreement. (*Sonn* v. *Heilberg*, 38 App. Div. 515; *Hurley* v. *Brown*, 44 App. Div. 480; *Holt* v. *Fleischman*, 75 App. Div. 593; *Bates* v. *Logeling*, 137 App. Div. 578; *Roth* v. *Jung*, 79 App. Div. 1; *Hodge* v. *Sloan*, 107 N. Y. 244; *Korn* v. *Campbell*, 192 N. Y. 490.) As an apartment house is not a private dwelling, the erection of an apartment house within the Murray Hill neighborhood would be an infringement of the Murray Hill restrictive agreement. (*Levy* v. *Schreyer*, 27 App. Div. 282; *Kitching* v. *Brown*, 180 N. Y. 414; *Skillman* v. *Sneathcurst*, 57 N. J. Eq. 1.)

*Jabish Holmes* for respondent. Restrictive covenants, being in derogation of the right to the unrestricted use

of property, are to be construed strictly against the party seeking to enforce them, and will not be extended by implication to cover anything not plainly prohibited. (*Duryea* v. *Mayor, etc.*, 62 N. Y. 592; *Blackman* v. *Striker*, 142 N. Y. 555; *Kitching* v. *Brown*, 180 N. Y. 427; *C., etc., Ry. Co.* v. *T. S. S. Ry. Co.*, 149 N. Y. 56; *Schoonmaker* v. *Hoyt*, 148 N. Y. 431; *Lese* v. *Lamprecht*, 196 N. Y. 37; *Dady* v. *O'Rourke*, 172 N. Y. 453; *Uihlein* v. *Matthews*, 172 N. Y. 159; *Hill* v. *Priestly*, 52 N. Y. 635; *Giles* v. *Comstock*, 4 N. Y. 272; *McKinney* v. *McBride*, 88 App. Div. 100; 9 Cyc. 490.) The object and intent of the Murray Hill restriction was to restrict the property affected to a residential district and thus to prohibit business, and the restriction simply prohibits the construction of anything but " dwelling houses " and does not prohibit the construction of anything but " private dwelling houses " or " dwelling houses for a single family only," as the appellant contends. (*Whitby* v. *Matthews*, 52 N. Y. 515; *Goodhue* v. *Cameron*, 142 App. Div. 486; *Uihlein* v. *Matthews*, 172 N. Y. 159; *Richardson* v. *H. F. Ins. Co.*, 149 N. Y. 315.) An apartment house, such as the one described in the submission, where every apartment is a complete dwelling house apartment, does not violate the restriction that the property shall only be used for dwelling houses. (*Sonn* v. *Heilberg*, 38 App. Div. 515; *Hurley* v. *Brown*, 44 App. Div. 480; *Holt* v. *Fleischman*, 75 App. Div. 593; *Bates* v. *Logeling*, 137 App. Div. 578; *Roth* v. *Jung*, 79 App. Div. 1; *Johnson* v. *Jones*, 244 Penn. St. 386; *McMurtry* v. *Phillips Investment Co.*, 103 Ky. 308; *Hutchinson* v. *Ulrich*, 145 Ill. 336; *Kimber* v. *Adams*, 69 L. J. Rep. [N. S.] Ch. 291; *Taylor* v. *Goodwin*, L. R. [4 Q. B. Div.] 248.)

HISCOCK, J. We are called on to determine whether the Appellate Division decided correctly in a controversy submitted to it that the appellant must carry out a con-

tract made by its assignor and representative with the respondent for the purchase of certain premises owned by the latter, and which inquiry involves the construction of a restrictive covenant.

The premises are situated at the corner of Madison avenue and Thirty-eighth street in what is frequently known as the Murray Hill district in the city of New York. It appears that all of the buildings in the block which includes the premises, outside of respondent's church building, are private dwelling houses designed for occupation by one family only, and which fully comply with the restrictive covenant hereinafter quoted. The proposed purchaser desired the premises as a site for a large apartment house and the contract fully provided that it should not be enforceable if such restriction, concededly applicable to the lands in question, prevented the erection thereon of such an apartment house or would render the premises unmarketable in view of such use.

The restriction which the parties thus considered and which has furnished this controversy was adopted by Mary Murray and others in 1847, when they were the owners of a large tract including the premises. It provided that "neither of them [said parties and owners] nor his heirs and assigns shall or will at any time hereafter erect or cause to be erected upon any of the lots owned by them respectively or any part of the same any building or erection other than brick or stone dwelling houses of at least two stories in height and with the ordinary yard apurtenances to dwelling houses and except churches and stables of brick or stone for private dwellings and further that they will not hereafter erect or permit upon such lots or any part of the same any livery stable, slaughter houses, etc."

The precise question is whether an apartment house will be a "dwelling house" within the meaning of this provision, for there is no objection to the form, style, character or construction of the proposed building other

than that it is to be an apartment house accommodating many families instead of a dwelling house intended for occupation by a single family.

It seems very clear that the simple term "dwelling house" used in this covenant is broad enough to include and permit an apartment house. We require little aid from dictionaries or decisions to enable us to see that within the ordinary meaning of language a dwelling house is a house or structure in which people dwell and such, concededly, are the character and purpose of an apartment house. There is no way in which we can fairly engraft upon these particular words considered by themselves any further limitations of definition which would make a structure used for ordinary dwelling purposes more or less a dwelling house merely because of the number of people who dwelt in it. I think that the appellant really concedes this but it urges upon us that the words "dwelling house" in this particular case are to be interpreted as though they were "private dwelling house," thereby meaning a building designed for occupation by one family only, and in which case the term doubtless would exclude an apartment house. The contention for this interpretation is substantially based upon three reasons.

The first one is that all of the other dwelling houses in the block where these premises lie are designed for single families, wherefrom it is urged that a practical construction has been placed on the covenant which is binding upon the present purchaser. There may be considerable doubt whether the fact that residents of this district up to a certain point of business and residential development in the city have failed to erect apartment houses would be any proof of an understanding or belief that such a house could not be erected when the owner thought the time had arrived for so doing. Possibly a party who was endeavoring to erect a building which was objected to as violating some covenant of uncertain meaning might under certain circumstances give evidence

18

that buildings like this had been erected in a neighborhood under the same restriction without objection as indicating a common understanding of what the restriction meant. But it is much more doubtful whether evidence would be permissible that people had not exercised certain rights as a means of proving that they did not possess the rights when such failure of exercise might be entirely due to other causes. But aside from this, of course the rule of practical construction is only applicable when the language which is the subject of construction is of dubious meaning and that we do not believe to be the case here. We think the words "dwelling house" are of too plain and certain a meaning to permit their interpretation to be governed by evidence of what people have done or thought under or about them.

The second basis of appellant's contention is that at the time when this covenant was drafted and put into operation no such thing was known as an apartment house, but this district so far as occupied at all was occupied by private residences and that, therefore, the parties had in mind and the contract should be interpreted as meaning such dwelling houses as then existed and excluding the modern apartment house. This contention also is too fallible to survive careful consideration.

Where a covenant in plain and complete language limits the use of real estate to the erection of a certain and general class of buildings by reference to their fundamental purposes, as dwelling houses, the law will not still further extend the restriction by enforcing it against all but a limited variety of such buildings which happened to be in use when the covenant was made. The general rule of law applicable to such a covenant is against such a construction, for it requires it to be construed strictly against, rather than liberally in favor of, the grantor.

I do not think that the parties who originated the present restriction expected any such interpretation as is

now urged.   It is true that at that time apartment houses
were not known, although a cheaper form of community
dwelling house, the tenement house, was.   But the peo-
ple who made the contract knew of the developments
through which dwelling houses had passed before attain-
ment of the houses which then largely prevailed in the
quarter in question, and of course they must be assumed
to have foreseen that still further development and
changes must occur.   If they failed to restrict against
these we must believe that it was not because they were
not to be anticipated, but rather because the parties over-
looked them, or more probably because they did not desire
to incumber their property by too detailed and burden-
some restrictions, but only by the fundamental and gen-
eral one that it should be used for dwelling houses as
these might be developed and fashioned by future
experience and customs.

The principle of interpretation which we are following
has been applied to other situations, and is, we think,
applicable to the present one.   (*Taylor* v. *Goodwin,* L. R.
[4 Q. B. D.] 228; *Diocese of Trenton* v. *Toman,* 74 N. J.
Eq. 702, 711; *Geiger* v. *P. & R. Turnpike Road,* 167
Pa. St. 582; *State ex rel. Bettis* v. *Mo. Pac. Ry. Co.,* 71
Mo. App. 385, 393.)

The last contention is based on the sentence in the
clause which excepts from the prohibition against the
erection of buildings other than dwelling houses, etc.,
"stables   *   *   *   for private dwellings."   It is said
that this permission to erect stables for private dwellings
reflects light on the entire clause, and shows that the
parties contemplated only private dwelling houses which
would mean dwelling houses for occupation by single
families.   We are not, however, able to accept that
interpretation.

This was to be a residential district.   By the exception
under consideration the right was permitted of erecting
stables which might be very obnoxious unless regulated,

and· it was evidently intended to guard against any such result and not adopt an exception which would permit public or unusual stables of any kind. This intent is evidenced elsewhere by the prohibition against livery stables. But there were or might be other stables of a public or obnoxious kind which would come in under the exception unless it was limited, such as business, boarding or community stables. To prevent this we have the limitation that the stables should be only for private dwellings, and I think that this was merely a simple and comprehensive method of saying that they should be for private purposes as distinguished from those of another and public character such as have been mentioned by way of illustration. It is difficult to believe that the draftsman by " private " dwellings had in mind anything different than was expressed by the preceding term " dwelling house." He was simply trying beyond question to impose upon this incidental use of the land a private as distinguished from a public or business use.

But even if we should assume that the two terms " dwelling house " and " private dwellings " were used with an intentional differentiation of meaning, I do not think the result would be that which is desired by the appellant. The primary clause permitting the erection of dwelling houses by itself is clear and complete, and its meaning will not be cut down by a subsequent phrase unless such is the obvious intent and effect. If the latter term now being considered is more restricted than the former it is just as permissible to believe that the draftsman intended to place greater and more careful restrictions on the erection of the potentially more obnoxious stable than upon a dwelling house, as it is to conclude that he intended to place a more limited meaning upon the preceding term by the use of narrower words in a subsequent clause relating to another and independent subject.

While such a restrictive clause as the general one now before us has not been heretofore construed by this court

in respect of the subject now involved, we think the interpretation which we are giving is well fortified by decisions of the Supreme Court.

In *Sonn* v. *Heilberg* (38 App. Div. 515) it was held that a clause prohibiting the erection of " any building * * * less than three stories in height, and the same to be in every way adapted for use as a family residence," did not prevent the erection of an apartment house. While the trial court evidently considered certain facts having relation to a change in the character of the structures and the business carried on in the immediate neighborhood where the building was to be erected, the Appellate Division placed its decision simply upon the meaning of the covenant itself, and it seems to us that the restriction there under consideration to a building adapted for use as " a family residence " was more exclusive than the one which we have been considering.

In *Hurley* v. *Brown* (44 App. Div. 480, 483) the clause under consideration forbade the use of property for certain business purposes and required that the grantee should build " a substantial two-story dwelling house " costing not less than a certain sum, and when objection was made to the erection of a building with stores on the first floor and flats or apartments above, it was held, quoting from the case of *Sonn* v. *Heilberg,* that " In no event would the erection of a flat or tenement house be a violation of the covenant against erecting anything but dwelling houses."

In *Holt* v. *Fleischman* (75 App. Div. 593) it was held that a covenant to erect upon a lot conveyed " a first class dwelling house," with certain dimensions, would not be violated by the erection of an apartment house.

In *Bates* v. *Logeling* (137 App. Div. 578) the doctrine of *Holt* v. *Fleischman* (*supra*) was reiterated, that the erection of an apartment house was not a violation of a covenant to erect a first class dwelling house.

This same principle seems also to have been held in the

case of *Gallatin* v. *Blake Building & Realty Co.*, which was tried before Hamilton Odell, Esq., as referee, and involved the construction of a clause prohibiting in the neighborhood of Gramercy park, in the city of New York, "any other buildings save brick or stone dwelling houses of at least three stories in height," and also by the judgment in *Thebaud* v. *Vultee*, tried in the Court of Common Pleas in the city of New York in 1888, and involving the consideration of the same covenant now before us. (See, also, *Johnson* v. *Jones*, 244 Pa. St. 386; *McMurtry* v. *Phillips Investment Co.*, 103 Ky. 308; *Hutchinson* v. *Ulrich*, 145 Ill. 336.)

Finally, it is urged that specific performance should not be decreed against this appellant for the reason that the statement of facts does not set forth as fully as it might the purposes for and the conditions under which this district is now occupied and because this judgment will not be conclusive upon others who are not parties to this proceeding and who may institute further actions to interfere with the enjoyment by appellant of these premises for apartment house purposes.

We appreciate that it might be a reason for withholding a command for specific performance if the judgment in this proceeding was based on a solution of disputed facts and would still leave the purchaser subject to serious attacks by other persons, but we do not feel that any such situation as that can arise.

The respondent is not relying for relief upon its version of disputed facts or even upon any parol testimony such as may be necessary as establishing a case of practical construction. It is simply relying upon what it contends to be and what we are holding to be a justifiable interpretation of a clause employing plain and unambiguous language which requires no evidence of surrounding circumstances or of practical interpretation by the parties. It is true that other parties who are interested may institute proceedings to enjoin the erection of an apartment

house. It seems to be the inalienable right of any person to start a lawsuit, but the court will not regard such possibility of action as a reason for refusing specific performance when a judgment is to be rendered which under the ordinary rule of *stare decisis* will control the determination of subsequent suits started for the same purpose. (*Ebling* v. *Dreyer*, 149 N. Y. 460, 471.)

In conclusion it may be stated that there is no lack of appreciation of the sentiments of those residents of this district who have become attached to it as one of a private residential character and who are anxious to preserve it against the inroads of more public or business purposes. There must, however, be considered the rights of those who desire, or feel compelled to, devote their property to such latter uses and who have an absolute right to invoke the principle that they may thus do unless such right has been clearly restricted by some binding covenant or limitation and this, as we have held, does not exist against the present proposed use of the respondent's lot.

The judgment, therefore, should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., CHASE, CUDDEBACK, HOGAN, MILLER and SEABURY, JJ., concur.

Judgment affirmed.