EDWARD J. COOK and MARY H. R. COOK, Respondents, v. JOHN R. MURLIN and JOSEPHINE S. MURLIN, Appellants.

Fourth Department, June 30, 1922.

Deeds — restrictive covenant limited where ambiguous — action to restrain use of private driveway across defendants' land — lot restricted to residence purposes and deed prohibited ingress and egress — modification agreement construed to permit defendants to use private driveway to reach land in rear of lot — injunction constituting heavy burden on defendants and no benefit to plaintiffs denied.

Where the language of a restrictive covenant in a deed is ambiguous the construction should be adopted which limits the restriction, to the end that owners of property may enjoy its free and unrestricted use.

In an action to restrain the defendants from using a private driveway over a certain lot for the purpose of reaching their land in the rear of the lot, it appeared that the land, of which the lot in question was a part, was originally conveyed by a deed restricting it to use " for the ordinary and usual residence purposes only," and the deed provided that no lots were to be laid out upon the avenue fronting the property of less than 100 feet; that in a map filed in the county clerk's office there was indicated a driveway running from the avenue through the restricted property; that in the deed to the defendants' predecessor of the lot in question the same restrictions were inserted and, in addition thereto, it was provided that the premises should not be used at any time in whole or in part for the purpose of ingress or egress of animals or vehicles; that thereafter all the parties interested in the restricted land entered into an agreement involving the lot in question and the lots owned by the plaintiffs, whereby it was agreed that all the restrictions contained in the deed of defendants' lot, and the lots of the plaintiffs, should be canceled and that said lots should be subject to the restrictions and conditions contained in the deed from the original grantor, and that as to the lots owned by the plaintiffs the covenant restricting the width to 100 feet should be modified to provide for a less frontage; that before any of the above transactions, the defendants' predecessor acquired land in the rear of the lots, which was not accessible to the avenue except through the private drive, or by a roundabout way and across a double-track electric railroad.

Held, that it was the intention of the parties by the modification agreement to so modify the original restrictions on the lots owned by the plaintiffs that those lots could be subdivided into less than 100-foot frontage and so as to provide the defendants' predecessor in title a means of reaching the avenue from her land in the rear of her lots by way of the private driveway in question; it was the intention of the parties after the modification agreement was made to have the lots used for all purposes which were not inconsistent with residential purposes.

When the restriction prohibiting the defendants' predecessor from using her lot for ingress and egress was removed by the modification agreement, it may be inferred that there was an implied agreement that she and her successors in title could construct a driveway over the lot for the purpose of ingress and egress.

To close the private driveway would result in great inconvenience to the defendants and no benefit to the plaintiffs, and to leave it open could not possibly harm the plaintiffs; therefore, the injunction should be denied as oppressive.

APPEAL by the defendants, John R. Murlin and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Monroe on the 28th day of March, 1922, upon the report of a referee appointed to hear and determine the issues.

The judgment restrains the defendants from using a private driveway across a lot owned by them in the town of Brighton, N. Y.

*Carnahan, Jameson & Pierce* [*George A. Carnahan* of counsel], for the appellants.

*Harris, Beach, Harris & Matson* [*Paul Folger* of counsel], for the respondents.

CLARK, J.:

Plaintiffs own lots Nos. 9 and 10 in the Golfside Acres tract, so called, in the town of Brighton, Monroe county, N. Y. Defendants own lots Nos. 7 and 8 in said tract adjoining plaintiffs' lots on the north and east, and they also own a considerable tract of land easterly of the above-named lots. Formerly defendants had no outlet from their lands excepting to go in an easterly and northerly direction to Kelly road and across the double-track trolley line of the Rochester and Eastern railroad. They opened a private driveway over a portion of the north side of their lot No. 8, which would furnish an outlet from their tract of land lying north and east of plaintiffs' lots connecting their property with East avenue.

Plaintiffs, who own lots 9 and 10 immediately south of defendants' lot No. 8, object to the use of this driveway, and by the judgment appealed from defendants have been restrained from further using it.

On the 2d day of January, 1913, the Country Club of Rochester conveyed to one De Ridder a triangular parcel of land which was bounded on the west by East avenue, and on the east by the Kelly road, which contained several acres. This deed contained a number of restrictive covenants which were stated to run with the land. Among these covenants was one to the effect that the premises conveyed were to be used " for the ordinary and usual residence purposes only." Another covenant was that " no lots to be laid out upon East Avenue having a frontage thereon of less than 100 feet." Another covenant contained in said deed provided that these restrictions should continue for twenty-five years from May 27, 1912, and the grantee was bound to insert like restrictions in subsequent deeds from him of the whole or any part of these premises.

Six days after De Ridder bought this property from the Country Club he sold and conveyed to Charles Stern and Edward P. Reed,

to each an undivided one-third of the above-described lands, making De Ridder, Stern and Reed the owners of the entire tract.

In July, 1912, they made and filed in the Monroe county clerk's office a map of this territory, which they called the " Golfside Acres " tract, and on that map a driveway was indicated called the " Golfside Parkway," being a street sixty-six feet wide and extending from East avenue through the property acquired from the Country Club to the Kelly road.

On the 1st day of February, 1913, De Ridder, Stern and Reed, and their wives, by deed, conveyed to plaintiff Edward J. Cook lot No. 9 of this Golfside Acres tract, and the deed was recorded in the Monroe county clerk's office February 26, 1913. The lot thus conveyed fronts 195 feet on East avenue, and the deed contained several restrictions, among them being one to the effect that the premises conveyed (lot 9) " shall be used for residence purposes only, and only one dwelling shall be erected upon the front half of the lot."

On the 1st day of February, 1913, De Ridder, Stern and Reed, and their wives, conveyed to Mary H. R. Cook lot No. 10 in the Golfside Acres tract, and in that deed the " Golfside Parkway " or street is specifically referred to as one of the boundaries of said lot No. 10. This lot fronts 195 feet on East avenue, and 305.9 feet on " Golfside Parkway " as shown on the map of the Golfside Acres tract. This deed to Mrs. Cook contained the same restrictions as the deed of lot No. 9 to E. J. Cook.

On the 28th day of April, 1913, De Ridder, Stern and Reed, and their wives, by deed duly recorded, conveyed to Charlotte R. Otis lot No. 8 of the Golfside Acres tract. This deed contained certain restrictive covenants, but they differed from those in the deed from the Country Club to De Ridder. These restrictions in the deed conveying lot No. 8 to Mrs. Otis provided that no building or other structure should be erected or be upon said premises; that the premises should not be used at any time in whole or in part for the purpose of ingress or egress of animals or vehicles, and that the grantee would suitably grade said premises, and seed and maintain them as a lawn.

On the same date De Ridder, Stern and Reed, and their wives, conveyed to Charlotte R. Otis lot No. 7 in the Golfside Acres tract, and the deed contained several restrictive covenants, among them being one that the lot thus conveyed should be used for residence purposes only, and only one dwelling should be erected upon the front half of the lot. Further restrictions in said deed prohibited the sale of liquors on the premises, and provided that all dwellings erected should be of the single family type; that no

stable or garage should be erected or maintained for other than private use, and finally it provided as follows: " 6. No driveway shall be maintained upon said premises nearer than five feet to the side lot lines, nor shall it extend to and serve more than three residences upon property in the rear of said lot owned by the party of the second part on August 3, 1912."

The property referred to as being owned by Mrs. Otis in the rear of lot No. 7 was a parcel of land lying immediately north of the Golfside Acres tract, and consisted of about eleven acres. This parcel had no frontage on East avenue, and no direct means of access thereto. After Mrs. Otis (who was defendants' immediate predecessor in title) purchased this eleven-acre tract, July 9, 1908, she erected a residence thereon, and occupied it as such down to the time she sold the tract to defendants in September, 1919. When Mrs. Otis purchased the eleven-acre tract lying immediately north of the Golfside Acres tract there was no means of access thereto from a public highway excepting over a driveway leading from these premises to the Kelly road, and which involved crossing a double-track trolley line. This was of course inconvenient, and to some extent dangerous, and it was of the utmost importance to Mrs. Otis and her successors in title to have some means of reaching East avenue from her eleven-acre tract, and it was undoubtedly with that end in view that she purchased lots 7 and 8 of the Golfside Acres tract on the 28th day of April, 1913.

On the 14th day of December, 1916, De Ridder, Stern and Reed, and their wives, as one party, and the plaintiffs Edward J. Cook and Mary H. R. Cook, as another party, and said Charlotte R. Otis as a third party, being the only persons having title to any of the premises contained in the Golfside Acres tract, or the eleven-acre parcel lying immediately north of it, entered into a written agreement which was recorded in the Monroe county clerk's office. That agreement recited, among other things, that lots 8, 9 and 10 of the Golfside Acres tract were subject to the covenants and restrictions in a deed from the Country Club of Rochester to Oliver E. De Ridder, which deed was recorded in the Monroe county clerk's office in book 904 of Deeds, at page 467, and that lot No. 8 of said tract, owned by Mrs. Otis, was subject to further covenants and restrictions, which have heretofore been specifically pointed out.

This agreement further recited that the parties desired to modify said covenants and restrictions in the deed of lot 8, and in deeds of other lots to the parties, so that the restrictive covenants should be uniform, and apply with equal force and effect to lots 8, 9, 10, 11, 12 and 13 of said Golfside Acres tract. It was, therefore, mutually agreed between the parties owning all these several lots and

parcels of land that all the covenants and restrictions relating to said lot 8 contained in the deed thereof from De Ridder and others to Charlotte R. Otis were released, canceled and discharged, and that lots 8, 9, 10, 11, 12 and 13 of said tract should, except as subsequently modified, be subject to restrictions and conditions contained in the original deed from the Country Club of Rochester to De Ridder for the term therein specified, and it also contained further restrictive covenants covering these several lots which provided that they should be used for residence purposes only, and only one dwelling should be erected upon the front half of such lots thus formed, and which dwellings should be and remain of the single family type.

It was also further provided in said agreement that as to lots 9 and 10, now owned by plaintiffs, the original Country Club restrictions should be modified so as to allow a subdivision of each of said lots 9 and 10 into two lots of substantially the same size, with a frontage of not less than ninety-seven and one-half feet on East avenue.

On the 27th day of September, 1919, by deed recorded in the Monroe county clerk's office October 9, 1919, Charlotte R. Otis conveyed to these defendants all of said eleven-acre tract adjoining the Golfside Acres tract on the north, and also lot No. 8 of said tract which extended to East avenue. The deed to defendants provided that it was made subject to the exceptions, reservations, conditions and restrictions upon said premises contained in a deed of the same from E. P. Reed and others to Charlotte R. Otis, as modified by the agreement of December 14, 1916.

After defendants obtained their deed, and in November, 1919, they made and filed in the Monroe county clerk's office a subdivision map of their eleven-acre tract, which they named " Smallwood," and that map indicates the " Oaklane Driveway " extending around the eleven-acre tract, and it also showed a road marked " Private Drive," extending from East avenue across the northerly portion of lot No. 8 of the Golfside Acres tract to the " Oaklane Driveway " of the " Smallwood " tract.

In 1921 defendants caused this indicated private drive to be improved as a roadway fourteen feet wide, with a four-foot shoulder on each side, and defendants subsequently sold four lots of the " Smallwood " tract which had been carved out of the eleven-acre parcel above referred to, and by their deeds conveying said lands they granted to the purchasers an easement to go over this private drive to reach East avenue, and it has been used by such purchasers as a means of ingress to and egress from their premises for vehicles and other purposes in reaching East avenue.

Plaintiffs owning the vacant lots 9 and 10 of the Golfside Acres tract thereupon began this action to restrain the use of this so-called private drive on lot 8 on the theory that its use as such to reach the " Smallwood " tract from East avenue is in violation of the restrictive covenants in the deeds heretofore mentioned, which provide, among other things, that these lots were to be used for residence purposes only.

The learned referee has held that plaintiffs were entitled to the relief they seek to the extent of restraining the further use of this driveway on lot No. 8 as a means of ingress to and egress from the " Smallwood " tract.

The question to be determined here is whether or not the original Country Club restrictions apply in view of the modifications as pointed out in the instrument executed by De Ridder and his associates, the plaintiffs and Mrs. Otis, defendants' predecessor in title on the 14th day of December, 1916.

The language of the original restrictive covenants in the Country Club deed to De Ridder, and also the language in the modification agreement of December 14, 1916, is more or less ambiguous, but it seems to me that the practical interpretation placed on the transaction by the parties shows that it was their intention to modify the original restrictions as to lots 9 and 10, owned by plaintiffs, so that these lots could be subdivided, giving plaintiffs four lots fronting on East avenue, instead of two, as provided in the original Country Club restrictions, and furnishing defendants' predecessor in title (Mrs. Otis) a means of reaching East avenue from her eleven-acre tract, now called " Smallwood," by way of the private drive as now constructed on the north side of lot 8, which she then owned.

Where the language of restrictive covenants is ambiguous the construction should be adopted which limits restrictions, to the end that owners of property may enjoy its free and unrestricted use. (*Schoonmaker* v. *Heckscher,* 171 App. Div. 148; *Kjerner* v. *Hayhurst,* 193 id. 908; *South Church* v. *Madison Ave. Building Co., Inc.,* 163 id. 359; affd., 214 N. Y. 268.)

In the last case there was a restrictive covenant in the deed which provided that neither the grantees nor their heirs or assigns would erect or cause to be erected upon any of the lots sold to them " Any building or erection other than brick or stone dwelling houses of at least two stories in height, and with the ordinary yard appurtenances to dwelling houses, and except churches and stables of brick or stone for private dwellings."

Plaintiff in that case contracted to sell the property to defendant's assignor. When the parties met to close the transaction defendant

refused to complete it on the ground that the above restriction would prevent the construction of an apartment house on the property, and that inasmuch as the conveyance would be subject to the restrictive covenant above referred to, the title would be unmarketable. In holding that the restriction did not apply, the court said: " A restrictive covenant is to be construed strictly against the grantor. * * * That the erection of an apartment house does not violate a covenant forbidding the erection of anything except dwelling houses is no longer an open question in this court at least."

In *Holt* v. *Fleischman* (75 App. Div. 593) it was held that a covenant to erect upon a lot conveyed " a first-class dwelling house " would not be violated by the erection of an apartment house, and that case was followed in *Bates* v. *Logeling* (137 App. Div. 578).

In interpreting restrictive covenants the intention of the parties should be carried out if that is possible. (*Clark* v. *Devoe*, 124 N. Y. 120; *Kitching* v. *Brown*, 180 id. 427.)

Following these authorities I am of the opinion that the learned referee has overlooked the intention of the parties when they made the modification agreement of December 14, 1916. He has held to the rule of excluding all uses of this property which are not strictly for residence purposes, whereas I believe it was the intention of the parties after the modification agreement was made to have the lots used for all purposes which were not inconsistent with residential purposes.

This driveway is along the north line of lot No. 8, a distance of 257 feet, and it would serve as a driveway to any garage that might be built on that lot.

When the modification agreement was made defendants' grantor, Mrs. Otis, owned the eleven acres adjoining the Golfside Acres tract on the north, and she had erected a house on said tract and was occupying it. She had no means of reaching East avenue from this property. Her only outlet was in the other direction to the Kelly road over a double-track railroad. She naturally wanted an outlet from her property by way of East avenue. When De Ridder, Stern and Reed conveyed to Mrs. Otis lot No. 7, containing a restriction that it should be used for residence purposes only, and also provided that no driveway should be maintained on the premises nearer than five feet to the side lot lines, nor that it should serve more than three residences on the property in the rear of said lot (meaning the eleven-acre tract) then owned by Mrs. Otis, defendants' immediate predecessor in title, it seems to me clear that the parties intended that the restriction to residence

purposes did not prohibit the building of a driveway to reach such residences. Indeed, a driveway was contemplated, for it is distinctly referred to in that deed.

Under the terms of plaintiffs' deeds of lots 9 and 10, they could not be subdivided because the Country Club covenants prohibited lots less than 100 feet fronting East avenue. By entering into the agreement of December 14, 1916, defendants' predecessor in title, Mrs. Otis, owning lot No. 8, consented that plaintiffs might subdivide their lots. Likewise, by the same instrument plaintiffs consented that the special restrictive covenants contained in Mrs. Otis' deed of lot 8, which prohibited, among other things, ingress to and egress from her property on the north over lot 8, should be eliminated. That meant, if it meant anything, that the restriction prohibiting her reaching the eleven-acre tract from East avenue over lot 8 was removed, and the circumstances justify the inference that when that restriction was removed by agreement of the parties, there was an implied agreement that she and her successors in title could construct a driveway over lot 8 for the purposes of ingress and egress, which theretofore had been specifically prohibited.

Plaintiffs have enjoyed, and are now enjoying, the benefits of the removal of the restriction with reference to their lots 9 and 10, and now they seek to deprive Mrs. Otis, who was a party with them to the modification agreement, and her successors, of the rights and benefits they granted to her by the same instrument. I do not think they should be permitted to do it. When this agreement was made the Golfside Acres map was on file, and all deeds had been made with reference to it. The map showed the Golfside Parkway as a street connecting East avenue with the Kelly road. Plaintiffs accepted their deeds with that map a public record, and they are chargeable with knowledge of what it contained, and it showed upon its face that a driveway to reach these lands in the rear of the Golfside Acres tract was contemplated by all parties, and when plaintiffs took their deeds with lot 10 bounded on one side by this Golfside Parkway street or driveway, their acts would justify the conclusion that there was a practical construction on their part of the restrictive covenants contained in these deeds permitting such a driveway connecting the eleven-acre tract with East avenue.

If plaintiffs' claim were to be upheld it would result in doing a great injustice to defendants without any corresponding benefit to plaintiffs. To permit this driveway to stand and be used as a means of reaching East avenue from defendants' lands in the rear of the Golfside Acres tract, no possible harm can come to plaintiffs, and they made no attempt on the trial to prove damages.

To close this private driveway, which would result from the sustaining of this judgment, defendants would be deprived of an easy, short and convenient way of reaching East avenue over their own property, and would be compelled to adopt as their only way of ingress to and egress from the eleven-acre tract the inconvenient, dangerous and much longer route by way of the Kelly road and over the Rochester and Syracuse double-track railroad.

In the case of *McClure* v. *Leaycraft* (183 N. Y. 36, 44) the Court of Appeals said: " An injunction that bears heavily on the defendant without benefiting the plaintiff will always be withheld as oppressive." That case was followed in the case of *Batchelor* v. *Hinkle* (210 N. Y. 243, 251).

In determining whether a court of equity should compel defendants to close their private driveway, the decision must depend on the facts established in this case. In other words, each case must depend upon the facts disclosed in its own record.

Upon the facts here I think it would be unfair and unjust to defendants to uphold this judgment, and it would not afford plaintiffs any corresponding benefit.

I, therefore, recommend that the judgment be reversed and the complaint dismissed, with costs.

All concur.

Judgment reversed, with costs, and complaint dismissed, with costs. Findings of fact reversed and new findings made in accordance with the opinion. Order to be settled before Mr. Justice Clark on two days' notice at which time proposals as to findings to be disapproved and new findings to be made may be submitted.