LEWIS J. BENNETT and Others, for Themselves and for Such Owners of Real Property in Central Park, Buffalo, N. Y., as Shall Come in as Parties Plaintiff, Plaintiffs, *v.* SEBASTIAN L. PETRINO, Defendant.

Supreme Court, Erie County, October, 1922.

Real property — restrictive covenants — covenant that there shall be but " one dwelling " erected on each lot — remodeling of structure into a two-family house will be enjoined.

The rule that in construing a restrictive covenant upon the use of real property all reasonable doubt should be resolved in favor of an unrestricted use, does not mean that an unnatural and strained construction should be given to the words used, and if possible the intention of the parties should be ascertained and carried out.

A tract of land intersected by various streets which were improved and accepted by a municipality as public streets was plotted and subdivided by the owner in fee into several hundred lots, plots and squares, as shown by a map duly filed in the proper county clerk's office. A written instrument duly recorded and which was referred to and made a part of each deed given by said owner recited that it had subdivided and was about to sell in parcels a portion of its land and intended to give it a high character for residence purposes, and to secure to each purchaser of a parcel thereof that such character shall be permanently maintained. The owner in and by said instrument agreed to and with each and every person who should be the vendee or grantee in any contract or conveyance of any of said lots, that all of such land should be subject to certain restrictions upon their use and enjoyment and that in every contract or conveyance of any parcel thereof these restrictions should be embodied by making said agreement a part thereof. Said agreement further provided that covenants to the same effect on the part of the vendee or grantee should be inserted in every contract or conveyance in such form as to run with the land. One of these restrictions was as follows: " But one dwelling and one barn shall be erected on each subdivision lot appearing on said map." Plaintiffs and others similarly situated brought an action to restrain the defendant from changing and remodeling a house erected on a lot designated on said map as one of the lots upon which " but one dwelling shall be erected," from a dwelling to be occupied by one family to a two-family building with upper and lower flats. *Held*, that said restriction will be construed to restrict the use of the land conveyed to defendant to a one single family house, and that the relief asked for will be granted.

A dwelling house may be a building in which one or more families dwell, but " one dwelling " restricts the use of the land not only to the number of buildings, but in the use to which the land may be put.

SUIT for injunction.

*Wallace Thayer* and *Percy Lansdowne* (*Frank Gibbons*, of counsel), for plaintiffs.

*Feldman & Feldman*, for defendant.

Supreme Court, October, 1922. [Vol. 119

PIERCE, J.   This action is brought by plaintiffs, and all others similarly situated, asking judgment restraining the defendant from changing and remodeling house known as No. 214 Morris avenue, Buffalo, N. Y., from a dwelling to be occupied by one family to a two-family building with upper and lower flats.

In 1892 the Buffalo Cement Company, Limited, was the owner in fee of a tract of land in the northerly part of the city of Buffalo, which was and is bounded on the east by Main street, on the north by Huntington avenue and a line about 150 feet north of Woodbridge avenue, said line being drawn from Beard avenue westerly to Parkside avenue, bounded on the west by Parkside avenue and the New York Central Belt Line right of way, and southerly by Amherst street.

The lands within these lines were intersected by various streets, which were improved and accepted by the city as public streets, and the land was plotted and subdivided into about 450 lots, plots and squares, as shown on a map filed in the Erie county clerk's office under cover 456.   The map thus filed shows the boundary of the tract, the intersecting streets, the lay out of the lots and squares, the improvements in the streets, and those contemplated, and, expressed thereon, is the desire and intention of the owners to make this tract a first-class and high-priced residential section. This land was in close proximity to Delaware park, the principal park of the city, and in a section of the city well calculated for residential purposes, and quite generally removed from business quarters.

The map filed stated that the owners intended the lands to be used for residential purposes, and so that that purpose might be carried out and the home-like character maintained and guaranteed to prospective purchasers, the owners prepared and recorded in Erie county clerk's office, in liber 650 of Deeds at page 248, on the 20th day of May, 1892, a set or series of " restrictions on the use and enjoyment of the lands in the City of Buffalo called Central Park."   The restrictions to the use and control of the land in this tract specifically pointed out which lots could be used for business, which could be used for churches, which for a club, which for a railroad station, and which could be devoted to the establishment of small parks on the tract.   Something over 400 lots were to be used as dwelling places, and at present 300 or more lots have been sold, and single-family houses erected thereon.

The scheme of establishing a section to be devoted to residential purposes, with buildings designed for and occupied by single families, has been carried out except in two houses adjacent to the railroad lands, which have been erected and designed for the

accommodation of two families. The defendant became the owner of lot No. 10, block 9, known as No. 214 Morris avenue, and signified his intention of changing the same into a house designed for two families, one on the ground floor and one on the second. A large number of the present owners of lots on the plot or tract known as Central park object to such change and contemplated occupancy, and bring this action to prevent such, on the ground that it would constitute a violation of the restrictions imposed on each lot.

The restrictions or limitations placed upon the use to which the land can be put are contained in a written instrument recorded in the Erie county clerk's office, which are referred to and made a part of each deed given by the Buffalo Cement Company, and recite that the Buffalo Cement Company has subdivided and is about to sell in parcels a portion of its lands, and intends to give the lands a high character for residence purposes, and to secure to each purchaser of a parcel thereof that such character shall be permanently maintained, and further:

" *Now, Therefore,* in consideration of the premises, the said Buffalo Cement Company, Limited, does hereby agree to and with each and every person who shall be the vendee or grantee in any contract or conveyance of any of said lots, that all of such land shall be subject to the following restrictions upon their use and enjoyment, and that in every contract or conveyance of any part or parcel thereof these restrictions shall be embodied therein by making this agreement, duly recorded, a part thereof; and agrees that covenants to that effect on the part of the vendee or grantee shall be inserted therein in such form as to run with the land and bind any subsequent estate or interest in the said land.

" 1.

" The land in the entire tract shall be used for residence and dwelling purposes only, and the usual and natural uses connected therewith, except on the lots mentioned in subdivision two. \* \* \*

" 2.

" But one dwelling and one barn shall be erected on each subdivision lot appearing on said map, except upon the following lots on which two houses and one barn may be located."

Then follows a list of the lots, blocks or tracts which can be devoted to business purposes, the erection of a church, club house, etc.

Subdivision 3 of the restrictions specifically points out the place on the lot where every house or barn shall be located with reference to the street line and the side lines of the lots.

The case was very fairly presented by able counsel on both sides, and without any effort to raise technicalities, they all frankly state that the only question involved is one of construction as to the meaning of the restrictions, which all admit were properly executed and recorded, and that every one had notice of the existence of such restrictions when he or she accepted a deed of conveyance to the lands now owned by the respective parties. The citation of authorities is of very little assistance. The defendant's property, No. 214 Morris avenue, is designated on the map filed by the cement company as lot No. 10, in block No. 9, which is one of the lots upon which " but one dwelling can be erected," and the disposition of the issues raised in this case requires a determination of the meaning of these words " but one dwelling and one barn shall be erected on each subdivision lot."

In construing the restrictions imposed upon the use of real estate, all reasonable doubts should be resolved against the grantor, and in favor of an unrestricted use. *Reformed P. D. Church* v. *M. A. Bldg. Co.*, 214 N. Y. 268.

This does not, however, mean that an unnatural and strained construction should be given to the use of words used, and the intention of the parties should be ascertained and carried out, if that is possible. *Clark* v. *Devoe*, 124 N. Y. 120; *Cromwell* v. *American Bible Society*, 202 App. Div. 625.

By subdivision 1 of the restrictions, all of the land is restricted to " residence and dwelling purposes," except certain lots, which are not material in this litigation. This restriction would prevent the use of any of these lots for any business purpose, but it might not, and under various decisions of courts of this state it would not, limit the erection of buildings upon each lot designed for use by single families, and to meet that situation the owner provided by subdivision 2 that " but one dwelling and one barn shall be erected on each subdivision lot; " and then, by subdivision 3, the owner specifies the particular location on each lot where a house could be located; but in subdivision 2 the owner uses restrictive words, and says " but one dwelling," which, to my mind, conveys the idea and expresses the desire and intention of the grantor that but one home, one residence, one abode, one family, shall be located or accommodated on each lot specified as being intended for use as residential lots.

" A covenant by a grantee not to use the premises for any other purpose except for a private residence is violated by the construction of a dwelling designed to accommodate two families." *Koch* v. *Gorruflo*, 77 N. J. Eq. 172.

Many cases reported in this state construing restrictions con-

tained in deeds are cited and commented upon by Judge Hiscock, in the case of *Reformed P. D. Church* v. *M. A. Bldg. Co.*, *supra*, but in all of these cases the plural " dwelling houses," " houses " or " buildings " is used. These words to my mind are susceptible of a much broader and comprehensive meaning than the term " one dwelling." A dwelling house may be a building in which one or more families dwell, but a single dwelling, or one dwelling, restricts the use of the land not only to the number of buildings, but in the use to which the land can be put.

After a careful study of the cases cited by the attorneys for the respective parties, I have concluded that the intended and express desire of the grantor in deeding this land was to restrict its use to one single family house, or one dwelling upon each lot.

The relief asked by the plaintiffs is, therefore, granted, with costs.

Judgment accordingly.