Jasen, J. (dissenting).
Defendants are the owners of lot No. 177 in Terrytown Tract, Section B, located west of the City of Syracuse in the County of Onondaga. Lot No. 177, approximately 20,000 square feet in area, is a pie-shaped parcel in a portion of the tract bounded by Treeland Circle. Terrytown Tract, as laid out in a map filed in the Onondaga County Clerk’s office, is composed of 170 lots varying in size from about 8,000 square feet to 20,000 square feet with frontage running from 80 feet to 250 feet.
On August 14, 1959 Terryland, Inc., owner of the tract, filed an instrument recorded in the Onondaga County Clerk’s office entitled ‘1 Protective Restrictions. ’ ’ The preamble of the instrument referred to “ the premises known as Terrytown Tract, Section B according to a map made by Sargent-Webster-Crenshaw & Folley, and filed in the Onondaga County Clerk’s office, April 22, 1959”.
Paragraph 1 of the provisions read as follows:
1. No lot shall be used except for residential purposes.
No building shall be erected, altered, placed or permitted to remain on any lot other than one detached single family dwelling, not to exceed two and half stories in height and a private garage for not more than two cars.
Paragraph 2 of the restrictions contained a minimum cost requirement for any dwelling, a minimum ground floor area, minimum front set back distances, and minimum sidelot distances.
Paragraph 3 in pertinent part provided:
3. No dwelling shall be erected or placed on any lot having a width of less than 50 feet at the minimum building set back line nor shall any dwelling be erected or placed on any lot having an area of less than 6,000 square feet.
*868 In 1964 the defendants commenced construction of two homes on lot No. 177. Shortly thereafter, plaintiffs brought proceedings for a preliminary restraining order, and thereafter a temporary injunction. Following a trial, a judgment granting a permanent injunction against defendants was entered. The trial court found a common scheme and uniform plan had been proven, making the protective restrictions enforcible. The trial court further found that the construction of more than one dwelling on a lot as indicated on the tract map constituted a violation of the restrictions.
The Appellate Division reversed unanimously on the law and the facts and dismissed the complaint. The Appellate Division found no restriction prohibiting the resubdivision of a lot and noted that the proposed structures complied in all respects with the recorded restrictions. Concluding that there was no violation or proposed violation on the part of defendants, the Appellate Division did not reach any of the other questions raised by defendants.
It appears that the Appellate Division adopted defendants’ argument that the wording of paragraph 1 of the restrictions was ambiguous and applied the general rule that restrictive covenants are to be construed strictly against those seeking their enforcement and in favor of the free use of property (Reformed P. D. Church v. Madison Ave. Bldg. Co., 214 N. Y. 268; Cook v. Murlin, 202 App. Div. 552, affd. 236 N. Y. 611). In order to reach this conclusion, it would appear that the Appellate Division concluded that the meaning of the word “ lot ” as used in the “ Protective Restrictions ’’was not restricted to a specific “lot” as numbered and delineated on the filed tract map. This purported ambiguity, together with the lack of specific prohibition against resubdivision, and the conformity of the proposed structures with the remaining restrictions, seems to have persuaded that court to find in favor of defendants.
The issue before this court is whether the term “ lot ” as used in the “ Protective Restrictions ” should mean a numbered lot as indicated on the filed map. I think it should. As noted before, the preamble to the restrictive covenants refers to the tract map previously filed with the County Clerk. The parcels are laid out on the map and each lot, as delineated by the lot lines, is separately numbered. It is reasonable to assume that a prospective purchaser would refer to the map for a graphic depic *869 tion of the lot which he intended to purchase. It is also apparent that the same purchaser would rely upon the map for an indication of the location and size of the surrounding properties in order to determine the anticipated population density of the neighborhood. In addition, conveyances refer to lot number and are not described by metes and bounds. Also, each deed contains a reference to “ restrictions of record.”
Examination of that portion of the tract map showing the area bounded by Treeland Circle in which lot No. 177 is located reveals that it is a large area laid out into six approximately equal lots in a somewhat symmetrical pattern. It is quite reasonable that a person purchasing one of these lots could expect that only six dwellings would be built on Treeland Circle. Given the filed map and the recorded restrictions, I do not feel that such a buyer could reasonably foresee that each of these lots could be further subdivided.
Notwithstanding the rule of strict construction noted above, I conclude that paragraph 1 of the “ Protective Restrictions ” does not contain such an ambiguity as to mandate the result reached by the Appellate Division. Viewing the instrument as a whole, the word “ lot ” is readily equated with the parcels as indicated by lot numbers on the tract map which is clearly identified in the preamble.
The order of the Appellate Division should be reversed.
Order affirmed, etc.