(70 App. Div. 218.)

COLEMAN et al. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. March 21, 1902.)

1. MUNICIPAL CORPORATIONS—STREET CLEANING—DUMPING GROUND—NUISANCE —INJUNCTION.

Greater New York Charter, § 534, requires the commissioner of street cleaning to remove and dispose of ashes, street sweepings, etc. Sections 542 and 836 require the board of the department of public docks to set apart for the use of the street-cleaning department such places, piers, etc., as may be necessary. By Laws 1887, c. 697, as amended by Laws 1888, c. 272, and Laws 1889, c. 257, the department of docks might establish the easterly line of Exterior street, determine on a plan for said street, acquire land therefor, and license temporary wharf structures, to continue no longer than till the construction of such street should be begun. After instituting proceedings to acquire the land, the dock commissioners, on application of the street-cleaning department, granted permission to erect a dumping board thereon for waste paper, ashes, etc., and buildings for the handling of waste. *Held*, that such use of the land until the construction of the street was commenced, if so used as not to become a nuisance in fact, was not unlawful, and could not be restrained.

2. SAME—CONSTRUCTING STREET—UNREASONABLE DELAY—REMEDY.

Where the dock commissioners of Greater New York unreasonably delayed the construction of a street after they had acquired land and adopted plans for that purpose, the remedy for such neglect was by mandamus to compel laying out of the street, and not by injunction to restrain a use authorized until construction of the street was begun.

3. SAME—EVIDENCE—FINDINGS.

In an action to restrain the street-cleaning department of Greater New York from dumping waste paper, ashes, etc., into the river at a certain point, there was evidence that dust and ashes were blown from the dump across property in the vicinity, but none that any was blown from the dump on the property of plaintiffs, nor that the business was not properly conducted, nor proof as to how pungent or offensive the smell arising from the dump was, or that plaintiffs were affected by it. *Held*, that a finding that the maintenance and operation of the dump was a nuisance in fact was not justified.

Appeal from special term, New York county.

Action by Maggie A. Coleman and others against the city of New York. From a judgment for plaintiffs (72 N. Y. Supp. 359), defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Terence Farley, for appellant.

Louis O. Van Doren, for respondents.

HATCH, J. By chapter 697 of the Laws of 1887, authority was vested in the board of the department of docks to establish the easterly line of Exterior street along a portion of the East river. This act was amended by chapter 272 of the Laws of 1888, and by chapter 257 of the Laws of 1889. By these acts, authority was devolved upon the department of docks to determine upon a plan for said street, and there was vested in the board of street opening and improvement of the city of New York, after the adoption of the plan, and upon the written petition or consent of certain property owners, authority to institute proceedings in invitum to acquire land for the purposes of the street, as determined upon by the dock department. The boundaries of the street were laid out, and a map and plan of the same was adopted by the dock department. The board of street opening and improvement instituted proceedings thereunder, and the city acquired title to the lands necessary for the street. These proceedings were begun April 23, 1891, and were terminated by an order of confirmation of the report of the commissioners appointed in the proceedings, and the same was filed in the office of the clerk of the court on the 14th day of July, 1897. A part of the land so taken was the property of these plaintiffs, and they have been assessed upon their remaining lands a proportionate cost of the proceeding. Nothing further has been done by the city to open or grade the said street, the same has never been opened for public use, and now exists only upon paper, except so far as the city itself has made use of a part of the land so acquired for its purposes. By the terms of the act of 1887, it was provided that the street should be laid out as provided by the plan adopted by the dock department, "and the same shall be the sole plan according to which any wharf, pier, bulkhead, basin, dock or slip or any wharf structure, or superstructure shall thereafter be laid out or constructed in that part of the water front included in and specified upon said plan, and from the time of the adoption thereof, no wharf, pier, bulkhead, basin, dock or slip, nor any wharf structure or superstructure shall be laid out, built or rebuilt in that part of the water front aforesaid, unless in accordance with such plan. Excepting, nevertheless, that the board of the department of docks may build or rebuild, or license the building or rebuilding of temporary wharf structures or superstructures to continue and remain for a time not longer than until the construction of said Exterior street shall be begun, all such licenses to be then determined without any right to damages or compensation in favor of the licenses." It is evident that the exception created by the terms of the act was intended to be applicable to the actual construction of the street, and during the period prior to

such time the dock department was authorized to make use of this land and water front for any temporary purpose, provided that a nuisance was not created thereby. On April 27, 1900, over a year prior to the time when the report of the commissioners in the condemnation proceeding had been confirmed and filed by order of the court, the board of dock commissioners, upon the application of the department of street cleaning of the city of New York, passed a resolution granting to such department permission to erect and maintain a dumping board on the crib bulkhead at the foot of East Eightieth street, and under such authority the street-cleaning department erected such dumping board, and other buildings in connection with the same, and has since used the board and other structures as a dumping place for waste paper, ashes, etc., and for the separation of such material therefrom as was suitable for sale. No garbage has ever been dumped at this place, as the same is separately collected, and is disposed of in other places in the city. By the provisions of the Greater New York charter (section 836), the board of the department of docks is required to set apart for the use of the department of street cleaning, the board of health, and other city departments, suitable and sufficient wharfs, piers, bulkheads, slips, and berths in slips for the use of said departments, and, by section 542 of the charter, such dock department is required to make compliance with the request of the street-cleaning department, and to set apart such places, wharves, piers, etc., as may be necessary. By section 534 of the charter, the commissioner of street cleaning is required to remove from the streets of the city and make disposition, as may be required, of ashes, street sweepings, garbage, and other like refuse and rubbish as often as the public health requires, or as may be found practicable. It was pursuant to this authority, and the request of the street-cleaning department, that the dock department authorized the construction of the structure of which the plaintiffs make complaint. In September, 1900, the plaintiffs brought this action to enjoin and restrain the city from making use of the property in the manner above specified, under a claim that such structures are maintained and used without authority, and that the same are a public nuisance. The complaint proceeds upon two theories—First, that the land and water front is used in violation of law, and especially in violation of the act under which Exterior street was constituted and authorized to be laid out and opened; and, second, upon the theory that the business as conducted is a nuisance, as matter of fact. The first theory, therefore, is that the structures are a nuisance per se, as matter of law; and, second, a nuisance, as matter of fact, assuming them to be lawful structures. It is evident that the court, in its decision, has adopted both theories, although it is quite probable that the learned court would not have found, as matter of fact, that the business as conducted constituted the same a nuisance, if the other element which the case presented had been eliminated. It is undoubtedly true that the defendant, acting through its constituted authority, was commanded to lay out Exterior street in the manner directed by the statute, and it was required in the performance of the mandate of the statute to exercise reasonable diligence in laying out and grading the street for the benefit of the general public, and particularly for the

benefit of the persons whose lands had been appropriated for the purpose. Undoubtedly the city has been guilty of laches in not proceeding with more diligence to lay out, regulate, and grade this street for purposes of its proper use. Its failure in this regard, however, can in no view be made to furnish ground for this action, as the plaintiffs are not entitled to a remedy to correct the evil by way of injunction. So long as the street in fact remains unopened for public use, the right granted to the city to authorize the land taken and the water front to be temporarily used remains; and if such use is of such a character that it can be terminated at any time when the street is opened and graded for the use of the public, it continues to exist so long as such conditions exist. The failure to perform the duty and open the street as commanded by the statute may be conceded to have been neglectful, and a violation of duty on the part of the city; but so long as the street remains unopened the use authorized by the dock department is a use authorized by the statute, and continues to be, and is, temporary, no matter how long the same lasts, as it cannot be construed into a permanent occupation unless permitted to exist after the street is opened to public use. The remedy for this neglect upon the part of the city is not by way of injunction, for, no matter how it result, it would not operate as a compulsory process upon the city to open the street, and until it perform that act the occupation is lawful. The plaintiffs, as parties in interest, have abundant authority to compel the city to make compliance with the statute. Their remedy in that respect, however, is mandatory, to compel affirmative action in obedience to the commands of the statute to lay out the street. The dock department is invested with as much authority to authorize the temporary use of a portion of this street and water front by another department of the city as to authorize its use by any other person or corporation. Of course, it could not authorize the maintenance of a nuisance thereon, but it can authorize a legal structure in which to conduct a legal business, and such period of use will continue to be lawful until the public authorities perform their duty and open the street, either voluntarily or under compulsion. It seems clear, therefore, that this structure may be authorized for the period prior to the opening of the street, whether the same can be thereafter maintained as matter of right or not. So far as the present surroundings are concerned, the dock is not occupied by the defendant's dumping board, and the use thereof is not, therefore, exclusive, as was the case in Hill v. Mayor, etc., 139 N. Y. 495, 34 N. E. 1090.

We do not find it necessary, in disposition of the present case, to determine whether the city is authorized to construct and maintain this dumping board at this particular place after the street is opened or not. It is evident, however, that such determination must rest upon the authority vested in the dock department and the character of use which may be made by the street-cleaning department. The question is to be solved by a construction of the statutes under which the power is exercised, and for the present it is not necessary for us to express an opinion thereon. It is sufficient now to say that the present use is authorized by the statute; consequently, it is not a nuisance per se, and cannot become such until the street be opened for public use.

So far as claim is made that the business as conducted constitutes the same a nuisance, we think the evidence is insufficient for such purpose. There is no pretense but that the business is properly conducted, with as little annoyance to surrounding persons and property as is compatible with carrying on the business at all. Indeed, upon this subject the city sought to show how the business was carried on, and that it was done with care and circumspection. The court ruled that it was not necessary for the defendant to give proof upon that subject until the method and manner of doing the business was attacked. No proof was offered upon such subject as a distinct issue; consequently, it must be regarded that the business was in all respects properly conducted.

The evidence offered to establish the nuisance, as a fact, tended to show that dust and ashes were blown from the dump across property in the vicinity; but there was no proof, so far as we are able to find, showing that dust and ashes were blown from the dump upon the property of the plaintiffs, while it did appear that considerable dust and other materials came from lime and cement stored and handled in that vicinity, and from brickyards and coal barges which were unladen near by. Indeed, the proof was stronger as to floating dust, ashes, and other material from these sources than from the dump. There was proof that some smell arose from the dump; but how pungent and offensive it was, or how far it extended, was not made to appear, nor did it appear that the plaintiffs were affected by it. Substantially, the whole basis of injury to the plaintiffs' property was claimed to arise from the structure itself, and we think there was no sufficient proof that the business as conducted constituted the same a nuisance.

It is to be borne in mind that the work of the street-cleaning department is a work of necessity. Upon it is dependent, in large degree, the comfort, health, and happiness of a large city; and it is common knowledge that some individuals must always suffer more inconvenience and discomfort from the performance of this public necessity than others. If the manner and method adopted in the conduct of the business does not create a nuisance, the right to conduct it must be supported. Kobbe v. Village of New Brighton, 23 App. Div. 243, 48 N. Y. Supp. 990; Pettit v. Railroad Co., 80 Hun, 86, 29 N. Y. Supp. 1137; Health Department v. Purdon, 99 N. Y. 237, 1 N. E. 687, 52 Am. Rep. 22.

As before observed, we think the trial court would have failed to find that this business as conducted constituted it a nuisance, had it not been for the fact that it regarded the existence of the structure a nuisance per se. As we regard the structure as lawful, and the evidence as insufficient upon which to find that the conduct of the business created a nuisance, it necessarily follows that the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.