RIVERDALE REALTY CO. v. CITY OF NEW YORK et al. (No. 7426.)

(Supreme Court, Appellate Division, First Department. June 4, 1915.)

MUNICIPAL CORPORATIONS ⬡719—DOCKS—MAINTENANCE OF COVERED DUMP —STATUTES—"DOCK PURPOSE."

Laws 1894, c. 152, added to the R. park in the city of New York a strip of land, reserving two parcels of land set apart for public docks, wharves, or commercial purposes. Section 9 of the act, as to the reserved areas, provided that the city department of docks should have, as to such land, the same powers of control, construction, and jurisdiction as it had under existing laws as to the water front in other portions of the city. Greater New York Charter (Laws 1901, c. 466) § 836, gives the commissioner of docks the power to designate and set apart, for the use of the department of street cleaning, sufficient wharves, piers, bulkheads, slips, and berths. *Held* that, since the use of a dock, pier, or bulkhead by the street cleaning department was distinctly a "dock purpose," the erection of a covered dump on one of the reserved dock areas could not be enjoined; the prohibition in section 9 that no portion of the land should be devoted to any other than dock purposes, and no structure placed thereon which should be detrimental to the public use and enjoyment of the park, meaning no more than that no structure should be erected in fact detrimental to health or enjoyment, or a nuisance per se, which the covered dump would not be, while Laws 1895, c. 900, providing that "no * * * dump or receptacle for the deposit of garbage," etc., "shall be erected on the water front of the park," had no application, since at the point where the reserved areas were situated the park in question had no water front.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1425, 1529–1535; Dec. Dig. ⬡719.]

Clarke, J., dissenting.

---

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Special Term, New York County.

Action by the Riverdale Realty Company against the City of New York and others. From an order granting an injunction pendente lite, certain defendants appeal. Reversed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, and DOWLING, JJ.

John F. O'Brien, of New York City, for appellants.

Charles L. Craig, of New York City, for respondent.

SCOTT, J. This action is brought by a corporation owning property facing the Riverside Drive and Park to restrain the city of New York and its commissioner of docks and street cleaning commissioner from proceeding with the erection of a covered dump within an inclosed building for the use of the department of street cleaning on land reserved for dock purposes on the Hudson river near Seventy-Seventh street. This dump is intended to take the place of an open dump which has been maintained for a number of years at Seventy-Seventh street. The structure sought to be restrained has been duly approved by the municipal authorities, the necessary money appropriated for its construction, a contract awarded therefor, and the work partially completed. The order appealed from virtually decides the action, giving to plaintiff all the relief asked for in the complaint.

The court at Special Term based its action solely on the ground that the proposed structure was illegal, refusing to find that it constituted, or that its operation would constitute, a nuisance in fact. We agree that the maintenance of the proposed dump will not, so far as appears by the papers before us, constitute a nuisance in fact, and indeed, whether it will or not will depend on the method of its use, rather than upon the nature of the structure. So far as the structure itself is concerned, it appears to be well designed to reduce to a minimum the objectionable features which necessarily inhere to every public dump; certainly it should be much less objectionable from every standpoint than the open dump which it is designed to supersede, and which has been maintained for a number of years at Seventy-Ninth street.

The sole question, therefore, to be considered, is whether or not the proposed structure is forbidden by law, passing, without deciding, the question whether plaintiff has brought itself by its complaint within the terms of the so-called Taxpayers' Act. It appears from the complaint that Riverside Park and Drive, lying between Seventy-Second and 129th streets and east of Twelfth avenue, was acquired by the city of New York in the year 1872. By chapter 152 of the Laws of 1894 there was added to the park a strip of land extending from Seventy-Second to 129th streets, lying westerly of the route or roadway of the Hudson River Railway Company and easterly of the bulkhead line of the Hudson river. Out of the strip thus generally described there was excepted and reserved two parcels of land, which were "set apart for public docks, wharves, or commercial purposes." It is upon one of these excepted and reserved areas that it is proposed to erect the covered dump sought to be enjoined.

As to each of these excepted and reserved areas it is provided by section 9 of the act, as follows:

"The department of docks of said city shall have and possess in respect to the two parcels of land aforesaid set apart as and for commercial or dock purposes the same powers of control, maintenance, construction and jurisdiction which the said department has and now possesses under existing laws in respect to the water front or lands under water in other portions of said city, including the power to erect and maintain piers extending to the pier line as established by said chapter two hundred and eighty-eight, Laws of eighteen hundred and sixty-eight. But no portion of the said lands, bulkhead or water front herein set apart for commercial or dock purposes shall be devoted to any other use or purpose, and no building, shed or any other structure shall be placed upon or within the same which shall in any manner be detrimental to the health of the public or injuriously affect the public use and enjoyment of said Riverside Park as hereby extended, or property fronting thereon, or be in any other respect a public or private nuisance."

We are unable to find in the statute any inhibition against the erection and maintenance of such a structure as is contemplated by the city authorities. The dock department is given the—

"same power of control, maintenance, construction and jurisdiction which said department has and now possesses under existing laws in respect to the water front or land under water in other portions of said city."

Among the powers and duties conferred and imposed upon the commissioner of docks is that he shall—

"designate and set apart for the use of the department of street cleaning, the board of health, and other city departments, suitable and sufficient wharves, piers, bulkheads, slips and berths  *  *  *  for the use of said departments." Section 836, Greater New York Charter.

Nor does the last sentence of the section, when rightly construed, prohibit the erection of the structure sought to be enjoined. The use of a dock, pier, or bulkhead by the street cleaning department is distinctly a dock purpose, and is so recognized by the section of the charter above cited. The inhibition against the erection of any building or structure "which shall in any manner be detrimental to the health of the public, or injuriously affect the public use and enjoyment of said Riverside Park as hereby extended or property fronting thereon, or be in any other respect a public or private nuisance," means no more than that no structure shall be erected which will in fact be detrimental to health or enjoyment, or a nuisance, and we find nothing in the papers before us to justify the conclusion that the proposed inclosed dump will be, in fact, such a structure. It certainly should be less detrimental to health and comfort, and less of a nuisance in fact, than the open dump which it is designed to supersede.

The plaintiff refers with confidence to chapter 900, Laws 1895, upon which the court at Special Term based its decision. The first section of that act reads as follows:

"Section 1. No brewery, distillery, slaughter-house, soap, candle, varnish, vitriol, glue, ink, turpentine or bone factory, or manufactory of gunpowder, or any bone-boiling establishment, or factory for tanning, dressing or preparing skins, hides or leather, *or creamatory, dump or receptacle for the deposit of garbage, ashes or refuse of any kind*, or any other noxious, dangerous, or offensive purpose or establishment whatsoever shall be erected or es-

tablished, upon any public park domain or upon the water front of said park domains above Fifty-Ninth street within the city and county of New York."

The prohibition contained in this section is specifically directed towards the erection of objectionable structures "upon any public park domain or upon the water front of said park domains above Fifty-Ninth street." The land upon which it is proposed to erect the structure sought to be restrained is certainly no part of any public park domain, nor is it the water front of such park domain, for at the point in question Riverside Park has no water front. There are long stretches of park domain between Seventy-Second and 129th streets which, under the act of 1894, run down to and abut upon the Hudson river, and there are other parks above Fifty-Ninth street which also run down to and abut upon the water. As to all of these there is a water front of the park domain, but at the point at which it is proposed to construct the covered dump the park domain does not come within nearly or quite 200 feet of the water, and consequently it has no water front. It is not without significance that, although an open dump has been maintained for many years at the foot of Seventy-Ninth street, no one seems to have invoked the act of 1895 as a ground for enjoining its maintenance.

The moving papers are filled with allegations wholly irrelevant to the question involved in this appeal, and which for that reason we do not discuss. It is sufficient for the purpose of this appeal that we do not find that the proposed structure will constitute a nuisance in fact, or that its erection and maintenance are forbidden by law.

The order appealed from must be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.

INGRAHAM, P. J., and DOWLING, J., concur. CLARKE, J., dissents.