GEORGE H. STORM and Others, Plaintiffs, *v.* CITY OF NEW YORK and Others, Defendants.

Supreme Court, New York County, June 27, 1917.

*Phillips & Avery*, for the plaintiffs.

*Lamar Hardy, Corporation Counsel* [*George P. Nicholson* of counsel], for the defendants.

DONNELLY, J. This is an action to restrain the defendants from maintaining and operating a covered dumping board and ramp located on the easterly side of Exterior street on the bulkhead alongside of the East river at the foot of East Seventy-second street, borough of Manhattan, city of New York, in the manner in which it is now operated, and from casting or precipitating dust, dirt, ashes, refuse and other matter upon the premises of the plaintiffs and upon the plaintiffs' stock of lumber, and also for damages. The plaintiffs are, and for over three years have been, the lessees of premises situated on the northwest corner of Exterior street and East Seventy-first street, and also on the southwest corner of Exterior street and East Seventy-third street, Manhattan, New York city, holding the premises under long-term leases. Upon these premises the plaintiffs maintain a lumber yard and office, and have a large and valuable stock of lumber, including dressed lumber, high-grade hardwood flooring, mouldings, etc.

After the plaintiffs came into possession of the premises under said leases, and subsequent to the time when plaintiffs began to operate their lumber yard, the defendants caused to be erected, and since said time have been operating, a dump opposite the foot of East Seventy-second street on Exterior street on the East river. To this dump are delivered in carts and wagons ashes, dirt, rubbish, street sweepings and other materials which are collected from the streets in a large area of the borough of Manhattan, and which are dumped into scows moored in the river adjacent to said dump. The dump itself is about one hundred and eighty-six feet in length and about forty feet in width, all told, and is inclosed at the back and roofed over, and is also partly inclosed on each end. There is, however, an overhang of about seventeen feet over the river, and it is contended that the ends of this overhang are exposed on each end of the dump. The carts and wagons are backed against a stringpiece along the side of this overhang, and the ashes, dirt, sweepings and other refuse are dumped from the carts and wagons into the scows, and it is contended that, when said ashes, dirt, sweepings and other refuse are so dumped, they descend through the open air under the overhang, and cause large volumes of ashes and dust to arise, which are blown into the air in clouds and into the lumber bins contained in plaintiffs' yards located at Seventy-first and Seventy-third streets on Exterior street, thereby causing them great damage.

Seventy-second street is what is known as a " dead-end " street;

that is, it terminates at the westerly side of Exterior street, and is at a height of some thirty feet above the level of Exterior street. In order to approach the dump from Seventy-second street, a ramp or runway was constructed by the defendants, which runs over Exterior street and descends to the dump at a very considerable incline. It is also claimed by the plaintiffs that when the carts and wagons are driven down this ramp, the incline is so great that the drivers are accustomed to "brake" the same by running the wheels of the carts or wagons against the stringpiece alongside of the ramp, which causes ashes to fall from the carts. It is conceded that the carts are covered, as a general thing, with canvas, but it is claimed that the "braking" of them against the stringpiece causes the carts and wagons to jar, and the ashes are shaken down upon the ramp. This ramp is inclosed on the north side toward part of plaintiffs' premises, but is open and exposed on the south side toward another part of plaintiffs' premises, and it is claimed that from this ramp ashes and dust and refuse are blown into the air and settle upon the plaintiffs' premises and upon the plaintiffs' lumber. It is contended on the part of the defendants that only a small amount of the ash dust escapes from said structure when the same is in operation, and that it is entirely dissipated before it reaches the plaintiffs' premises, which are located about one hundred feet away from the covered structure. It is also claimed by the defendants that other structures, such as an open dumping board of the Bouker Contracting Company, a coal hoist, and the Interborough Rapid Transit Company's power house, disseminate material in and about the neighborhood, and that such material reaches the plaintiffs' premises and the lumber contained therein.

The defendants further claim that a number of vessels are unloaded along the bulkhead in front of the plaintiffs' lumber yards, from which vessels are unloaded bricks, cement, flour, coal and other materials, and that the dust from the unloading of such materials is spread around on the surface of Exterior street. The defendants contend, therefore, that this dump at the foot of Seventy-second street did not cause damage to the plaintiffs' lumber, and that, if any damage has been caused to said lumber, it is due to these other conditions prevailing in the neighborhood over which these defendants have no control. It is further claimed by the defendants that the damage done, if any, in the Seventy-first street yard is slight; that the damage in the Seventy-third street yard is more extensive, and that the Seventy-third street yard is right in the midst of the locality of the Bouker dump, the Interborough power house, the coal hoist, etc., while the Seventy-first street yard is considerably removed therefrom.

As far as the construction of the dump is concerned, I find that it has been constructed in an up-to-date, modern manner, and certainly affords better protection from the dissemination of dust than that of an open dump. The evidence as to the operation of the dump is conflicting in so far as it relates to curtains being spread over the aforementioned overhangs at each end of said structures, but from all the evidence in the case I am unable to find that the plaintiffs have sustained the burden of showing that the dump is a nuisance in fact, and that any damage has been occasioned to them by the operation of the same.

The commissioner of street cleaning is required, pursuant to law (section 534 of the Greater New York Charter [Laws of 1901, chap. 466], as amd. by Laws of 1911, chap. 680), as often as the public health and the use of the streets may require, to remove the ashes, street sweepings, garbage and other light refuse and rubbish; and the commissioner of docks, in order to facilitate the removal of such ashes, refuse, street sweepings and garbage, is directed by the city charter to set aside a place for the department of street cleaning (section 542 of the Greater New York Charter [as amd. by Laws of 1915, chap. 500] and section 836). I cannot conceive of the operation of a public dump without some inconvenience and discomfort being suffered by some individuals, and it would be impossible to cite an instance where such a desired condition has been attained. But the general health and comfort of the inhabitants of the city require the operation of dumps, and, if the manner and method adopted in the conduct of such operation are in keeping with the best known methods, which seems to be the case in the present instance, the right to do so must be supported. Whether or not the maintenance of a dump constitutes a nuisance does not depend upon the nature of the structure, but rather upon the method of its use. Of course, each case will have to stand upon its own facts. (*Coleman* v. *City of New York*, 70 App. Div. 218; affd., 173 N. Y. 612; *Riverdale Realty Co.* v. *City of New York*, 168 App. Div. 103.)

I, therefore, hold that the dump in question, as maintained by the defendants in the loading of ashes on board scows moored beneath the dumping board, does not constitute a nuisance either in fact or in law, and I accordingly direct judgment in favor of the defendants. Findings passed upon. Submit decision and judgment upon three days' notice.