JOHN R. PETERSON, Respondent, v. THE CITY OF NEW YORK, Appellant.

First Department, March 18, 1932.

*Alfred D. Jahr* of counsel [*John E. Duffy* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel*], for the appellant.

*William T. Griffin*, for the respondent.

MARTIN, J. The East Bay Land and Improvement Company was the owner of land, approximately 300,000 square feet in area, located at the foot of Tiffany street, borough of The Bronx, known as plots "A" and " B " on a map filed with the register of Bronx county. On June 30, 1911, for the nominal consideration of one dollar, it deeded to the city of New York a parcel of land, one hundred and one feet long and fifty feet wide, immediately adjoining plots "A" and " B." The deed contained the following provision: " * * * This conveyance is made upon the following conditions: that the party of the second part, its successors and

assigns will hold, build and erect, within a reasonable time from the date hereof and will repair and keep in repair in good condition, a substantial wharf or dock, suitable for the landing thereat of steamboats, suitable for carrying passengers, freight wagons, carriages and animals to and from said wharf or dock.   *   *   *."

Shortly after the conveyance the appellant, The City of New York, built upon this and an adjoining strip of land a large and substantial pier, 539.15 feet in length and 51.76 feet in width, extending from the present United States bulkhead line to the present United States pierhead line, and has since that date properly maintained the pier for the commercial purposes set forth in the deed.

Between the months of April and October, 1923, the city of New York built, apparently without objection, a wooden platform on the half of the pier nearest plots "A" and "B" to within forty feet of the river end of the pier and at the same time built into and upon Tiffany street a heavy wooden ramp leading up to the platform.   This ramp runs from the United States bulkhead line, which is the southern boundary of Tiffany street, back into the street for a distance of sixty-four and seventy-nine one-hundredths feet.   Tiffany street was at all the times mentioned herein, and still is, a public highway.

Since 1923 the ramp and platform have been used continuously for the removal of garbage and other materials.   At the time the platform and ramp were constructed the city built two wooden and corrugated iron shacks on Tiffany street immediately in front of the respondent's property and a third shack in and upon the respondent's property.   Subsequent to the commencement of this action on January 10, 1930, the last-mentioned shack was removed entirely and the first two shacks were moved to the other side of Tiffany street.

The plaintiff claims to be the grantee of plots "A" and "B" from the East Bay Land and Improvement Company, having taken title successively in the name of two corporations, the Ryawa Holding Corporation and the Huntspoint Brick Manufacturing Corporation, having finally taken from the latter corporation title in his own name.   He seeks to enjoin the city from using the ramp for any purpose.

This is not a case where adjoining property has been made less valuable by the installation of a city garbage disposal plant.   Here, a deputy tax commissioner, an employee of the city of New York, purchased vacant land abutting property that has been used for several years by the city for the disposal of garbage and other material and is now attempting in a court of equity to prohibit

such use. His real purpose is not apparent. He admits he has no immediate use for his property, much of which is land under water, or vacant and unimproved land.

Three causes of action are alleged in the complaint and prayer for relief: The *first*, for the invasion of the public street by the erection of the ramp and shacks. The *second*, for the violation of the terms of the deed by the erection of the platform on the pier and use thereof for garbage disposal. The *third*, for the trespass on respondent's property by the building of a shack thereon. The last-mentioned shack having been removed at the time of the trial, the third cause of action was discontinued upon respondent's motion. Relief was granted upon the first and second causes of action. The judgment by a mandatory injunction directs the removal of the platform, ramp, shacks and debris from the pier and enjoins the use thereof for garbage disposal purposes.

The deed to the city of New York provides that the city shall erect a pier. The city contends that having fully complied with the deed by the erection and maintenance of a substantial wharf, pier or dock, satisfactory to the grantor, the fee of the land conveyed is permanently in the city of New York for use by it for any lawful purpose.

The city also says that the construction by the court of the clause in the deed above mentioned is not in harmony with the uniform decisions of the courts on this subject. There being no words of restriction it cannot be held that the purpose or intention was to restrict the use of the pier and that even if it included a provision for the use of the dock for a certain purpose set forth in the deed its use for another and additional lawful purpose not expressly prohibited would not be barred; that the deed from the East Bay Land and Improvement Company to the city of New York cannot be held to contain a " covenant running with the land; " that the city of New York in the proper exercise of its corporate functions imposed by law possesses the right to use a portion of the wharf and dock at the foot of Tiffany street for the purpose of garbage disposal and other lawful purposes.

The respondent says that the terms of the deed of June 30, 1911, constitute a covenant running with the land restricting the use of the land thereby conveyed.

The deed to the city does not contain a negative covenant or restriction of any kind. The agreement of the city to build and maintain a suitable dock on this property has been fully performed. The courts are reluctant to infer that premises were not to be used for purposes other than those mentioned, unless the language of the covenant clearly indicates that intention.

Restrictive covenants will not be implied unless the language is clear and unambiguous. (*Smith* v. *Scoville*, 205 App. Div. 112.) It is also a well-known doctrine that the covenant or condition will be construed most favorably to the grantee and most strongly against the grantor. Doubts and ambiguities must be resolved in favor of the right to the free use of property and against restrictions. (*Schoonmaker* v. *Heckscher*, 171 App. Div. 148; affd., 218 N. Y. 722; *Cook* v. *Murlin*, 202 App. Div. 552; affd., 236 N. Y. 611.) While courts will enforce covenants restricting the free enjoyment of land, the restrictions will not be enlarged or extended by judicial construction. (*Sullivan* v. *Sprung*, 170 App. Div. 237.)

Restrictive covenants are construed against those who formulate and seek to impose them. In *Baumert* v. *Malkin* (235 N. Y. 115) the Court of Appeals said: " The dispute is a narrow one involving the meaning of a few words and does not require long discussion. The defendants are entirely correct in asserting that we approach its consideration controlled by the general principle that restrictive covenants are to be construed strictly against those who formulate and impose them and that plaintiffs carry the burden of demonstrating that their version of the present covenant is sustained by a plain and natural interpretation of its language. * * *." (See, also, *Pierson* v. *Rellstab Brothers, Inc.*, 219 App. Div. 552; affd., 246 N. Y. 608; *Bennett* v. *Petrino*, 235 id. 474.)

The grant should not be limited unless the terms thereof clearly restrict the use of the property.

In *Schuman* v. *Schechter* (215 App. Div. 291) the court said: " Taking all the facts and circumstances into consideration, and applying the rule that the construction which should be adopted in doubtful cases is the one that limits the effect of the covenant rather than the one that extends it (*Kjerner* v. *Hayhurst*, 193 App. Div. 908), I am of the opinion that the use of the premises is not in any wise restricted by the covenant found in the chain of title thereto. The law favors the free and unrestricted use of property, and, therefore, all doubts and ambiguities must be resolved in favor of the natural right to the free use and enjoyment of the property and against restrictions. (*Schoonmaker* v. *Heckscher*, 171 App. Div. 148.) "

In *Bull* v. *Burton* (227 N. Y. 101, at p. 111) the Court of Appeals said: "A restrictive covenant in a deed should be construed strictly (*Duryea* v. *Mayor, etc., of N. Y.*, 62 N. Y. 592; *Kitching* v. *Brown*, 180 N. Y. 414), but according to the intent of the parties to the deed. (*Munro* v. *Syracuse, L. S. & N. R. R. Co.*, 200 N. Y. 224.) "

In the case of *Clark* v. *Devoe* (124 N. Y. 120) the court held that

only by the use of plain and direct language by a grantor will it be held that he created a right in the nature of an easement attached to one parcel of land, making another servient thereto for all time. The court also held that the primary rule for the interpretation of a covenant, as well as other contracts, is to gather the intention of the parties from the words, by reading not simply a single clause, but the entire context, and where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered.

In *Cook* v. *Murlin* (*supra*) the court said: " Where the language of restrictive covenants is ambiguous the construction should be adopted which limits restrictions, to the end that owners of property may enjoy its free and unrestricted use. (*Schoonmaker* v. *Heckscher*, 171 App. Div. 148; *Kjerner* v. *Hayhurst*, 193 id. 908; *South Church* v. *Madison Ave. Building Co., Inc.*, 163 id. 359; affd., 214 N. Y. 268.) * * *

" In interpreting restrictive covenants the intention of the parties should be carried out if that is possible. (*Clark* v. *Devoe*, 124 N. Y. 120; *Kitching* v. *Brown*, 180 id. 427.) * * *

" In the case of *McClure* v. *Leaycraft* (183 N. Y. 36, 44) the Court of Appeals said: 'An injunction that bears heavily on the defendant without benefiting the plaintiff will always be withheld as oppressive.' That case was followed in the case of *Batchelor* v. *Hinkle* (210 N. Y. 243, 251)."

This action is not to abate a nuisance, although the statements made during the trial and in the decision would indicate that such was the relief demanded. The contention of the respondent is based upon a claim of absolute right given by a deed and must be determined by that conveyance.

The dock built by the city covered much more than the plot conveyed by the deed in question. It could not have been the intention of the parties to limit the use of that dock as argued by respondent. It must have been anticipated that such an important public improvement would be utilized for public purposes. Otherwise, the city would probably be compelled to build an additional dock for public purposes not mentioned in the deed, and would be compelled to maintain two docks instead of the one now maintained. This ramp and approach may be very useful for public purposes other than disposing of garbage. Such structures are generally used to dispose of the material excavated from vacant property when buildings are being placed thereon.

The dock is still maintained as originally agreed, and the city receives a substantial income, known as wharfage, from the use thereof in the discharge of freight and passengers. It is, there-

fore, apparent that the city is doing and has done everything it agreed in the deed to do. The party conveying the property to the city made no complaint about the use of the property and it appears to have been satisfied with the use being made of the dock. As pointed out, the complaint is made by a recent purchaser.

The city is not trespassing upon any part of the land owned by the plaintiff. The plaintiff brought himself into this litigation by purchasing this land, upland and land under water which of course would become more valuable if the city did not use the pier for the removal of garbage or other refuse. No doubt when the land was sold to plaintiff the fact that it abutted a dock which was used partly for dumping purposes was taken in consideration.

We do not believe that the use of part of the dock or wharf as a place for the dumping of excavated material or garbage into scows is contrary to the intention of the original grantor or contrary to law. If the city should restrict the use of the ramp to unloading dirt excavated from building sites for the construction of buildings it could not be seriously contended that the plaintiff could prevent such use.

Section 540 of the Greater New York Charter provides for the use of docks concurrently with the street cleaning department for the removal of ashes, garbage and sweepings. Section 542 of the Greater New York Charter provides that the dock department shall set aside certain docks for the department of sanitation (as the department of street cleaning is now known) for the removal of ashes, garbage and other material. Such use does not constitute a nuisance.

In *Coleman* v. *City of New York* (70 App. Div. 218; affd., 173 N. Y. 612) this court said: " It is to be borne in mind that the work of the street cleaning department is a work of necessity. Upon it is dependent in large degree the comfort, health and happiness of a large city, and it is common knowledge that some individuals must always suffer more inconvenience and discomfort from the performance of this public necessity than others. If the manner and method adopted in the conduct of the business does not create a nuisance, the right to conduct it must be supported."

Section 836 of the Greater New York Charter provides that " The commissioner of docks shall designate and set apart for the use of the department of street cleaning, the board of health, and other city departments, suitable and sufficient wharves, piers, bulkheads, slips and berths in slips for the use of said departments."

In the *Coleman Case* (*supra*) it was also said: " As before observed, we think the trial court would have failed to find that this business as conducted constituted it a nuisance, had it not been for the

fact that it regarded the existence of the structure a nuisance *per se.* As we regard the structure as lawful, and the evidence as insufficient upon which to find that the conduct of the business created a nuisance, it necessarily follows that the judgment should be reversed  *  *  *."

The city points out that the court relied entirely upon the deed as giving the right to the plaintiff to injunctive relief. We are unable to find any such right.

It seems to us that the court evidently had in mind that a garbage disposal plant was a nuisance and proceeded upon that theory at the trial. It has been held that in order to safeguard the health of the people of any community the disposal of garbage and sweepings may be a necessity and a plant for that purpose does not constitute a nuisance. Assuming that a conclusion was reached by the trial court that it was a nuisance, that would not warrant a direction that would compel the taking down of this ramp or superstructure which may be used for other lawful purposes.

The judgment should, therefore, be reversed, with costs, and the complaint dismissed, with costs.

FINCH, P. J., MERRELL, McAVOY and SHERMAN, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.