JOHN R. PETERSON, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

(Argued October 12, 1932; decided November 22, 1932.)

William T. Griffin and Francis R. Peterson for appellant. The ramp constitutes an illegal invasion of the public street and the trial court properly ordered its removal. (*City of New York* v. *Rice*, 198 N. Y. 124; *Bradley* v. *Degnon Contracting Co.*, 224 N. Y. 60; *Coleman* v. *City of New York*, 70 App. Div. 218.)

Arthur J. W. Hilly, Corporation Counsel (*Alfred D. Jahr, Edwin J. Talley* and *John E. Duffy* of counsel), for respondent. The city of New York in the proper exercise of its corporate functions imposed by law possesses the inherent right to use a portion of the wharf or dock at the foot of Tiffany street for purposes of garbage disposal and other lawful purposes. (L. 1901, ch. 466, §§ 535, 539, 540, 542; *Coleman* v. *City of New York*, 70 App. Div. 218; 173 N. Y. 612.)

CRANE, J. The streets of the city of New York are for the use of the public and cannot be permanently occupied by the city for any of its activities except as specifically authorized by the Legislature. They are acquired and held in trust for the use of all the people. For ordinary and general transportation and traffic they are free and common to all citizens. (*City of New York* v. *Rice*, 198 N. Y. 124; *Bradley* v. *Degnon Contracting Co.*, 224 N. Y. 60; *Callanan* v. *Gilman*, 107 N. Y. 360; *Matter of McCoy* v. *Apgar*, 241 N. Y. 71; 3 Dillon on Municipal Corporations, § 1175; *Knickerbocker Ice Co.* v. *42nd St. R. R. Co.*, 176 N. Y. 408.) The Borough President, by section 383 of the Greater New York Charter (L. 1901, ch. 466; amd. L. 1907, ch. 383; L. 1921, ch. 170; Local Law No. 1 of 1929), is given jurisdiction over the public streets, the power to remove incumbrances and the right to issue permits to use or open them. The Dock Depart-

ment, as the name would suggest, has control of the wharves and docks of the city. By section 818 of the charter (amd. L. 1918, ch. 515) the Commissioner has exclusive charge and control of the wharf property of the city, including wharves, piers, bulkheads and structures thereon and water adjacent thereto and all slips, basins, docks, water fronts, land under water and structures thereon and the appurtenances, easements, uses, reversions and rights belonging thereto. The President of the borough, however, shall have control of regulating, grading, curbing, flagging, guttering and draining of marginal wharves, streets or places and laying crosswalks thereon, but the President shall have no other jurisdiction or control of a marginal wharf, street or place. Marginal wharves are provided for in another section, referred to hereafter. Section 535 says that the term "streets" shall not include such wharves, piers and bulkheads or slips and parts of streets and places as are by law committed to the custody and control of the Department of Docks, while section 540 imposes upon that department the duty of cleaning wharves, piers, bulkheads, heads of slips and portions of any streets and places by law committed to its custody and control. Also section 542 (amd. L. 1915, ch. 500) directs the Dock Department or Commissioner to set apart for the Street Cleaning Commissioner suitable and sufficient slips for the performance of their duties; that is, suitable to be used to carry away refuse.

By these provisions of the charter we readily see that the Dock Department has full and complete control of the wharves and docks and may permit them, as necessary, to be used for street cleaning purposes. It also has control of marginal wharves, streets or places. These are referred to in the above sections as streets or places committed by law to the custody and control of the Department of Docks. What are these? Section 819

(amd. L. 1913, ch. 327) tells us. This section provides a method for the improvement of the water front and the creation of marginal wharves and streets which after the plans therefor shall have been adopted cease to be public streets. All wharves and piers are to be laid out and built according to these plans which must have the approval of the Sinking Fund Commissioners. Herein we find the following: " Whenever the plan so determined upon and adopted, or hereafter to be determined upon and adopted, shall include the widening of an exterior street or avenue, or the opening and construction of a new exterior street or exterior avenue, or the abandonment or closing of such street or avenue already in existence, the power to widen, open, construct, abandon or close the same shall exclusively reside with the said commissioner of docks, who is hereby authorized to take such steps as may be necessary in that regard, and after the same shall have been so widened or opened, the right to maintain the widened portion of a street or avenue already opened, and such new street or avenue shall also reside with the said commissioner of docks; but the street or avenue so widened to the extent of the part so widened, or such new street or avenue opened under this plan shall not be a public street, but shall be a marginal wharf, and shall be used in that regard in such manner from time to time as the commissioner of docks shall, by resolution, determine. The commissioner of docks shall have exclusive power to regulate the use of marginal streets so that the land and buildings upon all such marginal streets may be used to the best advantage in connection with the wharves and bulkheads; and the commissioner of docks shall have the power to regulate, by license or by any other suitable means, the transfer of goods and merchandise upon, over or under all such marginal streets;   *   *   *."

All other streets remain under the supervision and control of the Borough President.

With this brief statement of the respective rights and powers of the Department of Docks, the Borough President and the public, let us look at Tiffany street in the Bronx as it appears in this appeal record. It runs down to the bulkhead at the river front and is admittedly a public street; the city's answer in this case pleads it as such. The findings of the trial judge, affirmed by the Appellate Division, state that Tiffany street is and was at all times mentioned a public street, the southerly termination of which is the present United States bulkhead line. And the Corporation Counsel on the trial said: "I also respectfully wish to call your Honor's attention to the fact that if there are any encroachments on the public street that it is the duty of the Borough President of the county where the encroachment on the street is situated to be brought in as a party defendant." The city does not claim that Tiffany street has been committed by law to the custody and control of the Commissioner of Docks or that it is a marginal wharf, street or place laid out and constructed according to plans pursuant to section 819 of the charter.

Tiffany street, therefore, being a public street down to the bulkhead line in the river and under the supervision of the Borough President, the Dock Department had no right to build a structure in the street and shut off part of it from use by the public. The pier and double-decker dock running out into the river was under the exclusive control of the Dock Department and it could authorize its use by ash carts or garbage wagons but it could not build a ramp in the public street to afford a driveway up to the second or upper floor of the dock. The trial court found that this encroachment or ramp was built into, upon and over Tiffany street leading up to the upper platform of the pier and extended along Tiffany street, a distance of fifty-two feet, with a width of twenty-five feet. These findings were reversed by the Appellate Division, but no others were made in their place. The

findings of that court are silent on encroachments. As the maps and photographs are not clearly explained in the evidence we turn to the brief of counsel, wherein we find the appellant stating: " This ramp runs from the United States bulkhead line, which is the southern boundary of Tiffany Street back into the street for a distance of 64.79 feet." The opinion of the Appellate Division says the same thing. (235 App. Div. 41, 42.)

On the argument the Corporation Counsel frankly stated that the surveys showed an extension into the public street of fourteen feet. No one denies that the approach ramp does encroach upon Tiffany street to some extent and for some distance. This encroachment must be removed as it is an illegal usurpation of the public rights in the highway. The carts of the Street Cleaning Department can go onto the dock from the street level like any other conveyance. (*McCarthy* v. *Mills*, 214 App. Div. 70; *Coleman* v. *City of New York*, 70 App. Div. 218.)

In all fairness to the Appellate Division, we must mention that this question of encroachment on the public street, of which nothing is said in the findings, was in all probability not pressed upon the court's attention. Here also the main point on the appeal has been the insistence of the appellant that by reason of covenants and conditions in a predecessor's deed, the pier itself, or the present user of it, was illegal and a violation of those conditions. To this matter the learned court below gave its attention and we can add nothing to what has been so ably said by the learned justice writing the opinion. We agree with him.

For the reasons stated the relief asked for must be granted to the extent of requiring the city to remove the ramp from the street.

The judgment should be modified in accordance with this opinion and as so modified affirmed, with costs in this court.

POUND, Ch. J., LEHMAN, KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgment accordingly.