295 P.2d 209

Jose Maria MARTINEZ, Jose Remigio Martinez, Onesimo Trujillo, Daniel Trujillo, Manuel Gallegos, and Santiago Gonzales, Appellants,

v.

W. H. MUNDY, Sr., and W. H. Mundy, Jr., Appellees.

No. 5928.

Supreme Court of New Mexico.

March 20, 1956.

Harry L. Bigbee, Donnan Stephenson, Santa Fe, Quincy D. Adams, Albuquerque, for appellants.

Gilbert, White & Gilbert, Seth & Montgomery, Santa Fe, for appellees.

McMANUS, District Judge.

This action began by the filing of the first pleading in the district court of Rio Arriba County on August 4, 1951. The complaint was one in ejectment alleging generally that the plaintiffs were entitled to possession of a tract of land described therein (referred

to herein as the Mundy Tract); that the defendants have unlawfully withheld and do now withhold from plaintiffs the possession of said land, praying damages therefor. For their answer, the defendants deny the material allegations of the complaint and by separate defenses raise the contention that defendants, appellees, and their predecessors in interest obtained title by adverse possession by virtue of actual, visible and notorious possession in good faith under color of title, claiming further that taxes were paid and that no suit had been effectively prosecuted during said period of time. The defendants, (appellees) further alleged that they, the defendants, and their predecessors in interest, had held possession of the property by virtue of deeds of conveyance purporting to convey an interest in fee simple. The defendants also asserted in their counter-claim a statutory form of quiet title suit wherein they prayed that their title be quieted. A demurrer was filed to the counter-claim by the appellants raising questions to the effect that the Rules of Civil Procedure did not apply to an action in ejectment, and that a counter-claim is not a proper pleading and other matters which will be discussed hereinafter. There appears in appellants' brief, references to their objections to a change of venue obtained in this suit but there is nothing in the record or in either of the briefs to indicate that such a change was improper at the time it was granted. The pleadings also indicate a motion for separate and prior trial of certain issues before the trial court made by the appellees. This motion was granted by the trial court and the case was tried on the issues raised by defendants' counter-claim and plaintiffs' reply thereto, without jury.

A motion for an advisory jury was further overruled by the trial court. A final decree was entered decreeing that the defendants and counter-claimants, the appellees here, were the owners in fee simple of the land described in the complaint and further ordered the title quieted in their behalf.

Upon appeal of the decree of the lower court, this cause comes to this court on fifty-eight assignments of error. All of said assignments of error are argued in six points which we will take up in sequence.

The first point raised by the appellants, alleges that the appellees' basic title is defective in that it can be traced only to Francisco Martinez, who was merely one of the heirs of Manuel Martinez, whose title was confirmed by the Act of Congress of June 21, 1860, 12 Stat. 71. The matters contained in appellants' first point constitute a collateral attack on the patent granted by the United States to Francisco Martinez. It is fundamental that a patent is the highest evidence of title, and with it passes all control of the executive department of the government over the title and as a general rule it is impeachable only for fraud or mistake and is presumptive evidence of the true performance of every prerequisite to its issuance. It is also well

settled that a patent is, on collateral attack, deemed to be conclusive that the government has passed its title to the lands granted and that all prerequisites existed and were complied with so as to render it a complete and lawful act.

Further, the question of this very patent to Francisco Martinez was discussed in the case entitled H. N. D. Land Co. v. Suazo, 44 N.M. 547, 105 P.2d 744, 749, wherein the court discussed the lands involved within the Tierra Amarilla Grant, the lands involved in the instant case being within said grant.

In H. N. D. Land Co. case, this court referred to the history leading up to the patent issued to Francisco Martinez. In concluding their opinion said:

"So, if this were a private grant, the act of confirmation merely carried out the treaty obligation; if it were a community grant, the common lands were merely government domain and the confirmation constituted a grant de novo to the grantee, Francisco Martinez. Under either view the absolute title was vested, by the act of confirmation in the said grantee."

The above indicates that the validity of the patent to Francisco Martinez has been decided. Therefore, the commencement of the title, for all practical purposes, begins with Francisco Martinez and thereby the appellants have failed to sustain their arguments contained in Point One.

The appellants, for their second point offer that there are fatal defects in appellees' chain of title subsequent to the patent from the United States to Francisco Martinez. This chain of title referred to runs from the United States of America to Francisco Martinez by patent. The next conveyance runs from Francisco Martinez and wife to F. A. Manzanares, dated June 1, 1871. The next conveyance is from Manzanares to Thomas B. Catron dated December 31, 1878. The appellants have no strenuous objection to the validity of the conveyances between the holding of title by Catron down the line to the last conveyance to the defendants and appellees herein.

The appellants do not question that the above referred to instruments were executed, but argue that the language contained on the face of said deed is peculiar.

It is the appellants' assertion that the face of the document shows no intention to convey the entire Tierra Amarilla Grant to Manzanares and state that the deed is conflicting and ambiguous in its terms. To this end we will first look at the Martinez to Manzanares deed, and the entire granting clause of said deed reads as follows:

"* * * we have granted, bargained, sold, transferred, conveyed and confirmed, and by these presents do grant, bargain, sell, transfer and confirm to the said party of the second part and to his heirs, successors and assigns, forever, all of the right, title and in-

terest which as heirs and original grantees appertains to us, or could appertain to us at any time and by any inheritance or by whatever other manner in the entire property, and possession and grant known as the Tierra Amarilla in the County of Rio Arriba, Territory of New Mexico."

Following the granting clause is a reference to 150 varas of tillable land which is quoted as follows:

"Giving notice also that the party of the second part will take possession of 150 varas of tillable land situated in the Lugar de los Ojos, within the said Grant;"

We can see from the above that the granting clause on its face conveys all of the grantors' interest in the entire property, the grant known as the Tierra Amarilla, in the County of Rio Arriba, Territory of New Mexico.

It is fundamental that a deed must be read as a whole and while there may be some unexplained verbiage in part of the deed, it is well established that the granting clause is the main source for determining the estate or interest to be conveyed and to that end we quote Thompson on Real Property, Permanent Edition, Volume 6, § 3188 at page 347, where it is stated:

"When the recitals agree with the operative part of a deed they have no legal effect; and, if the operative part of a deed is clear and unambiguous,

recitals at variance with it are of no effect. The operative clause, when clear, always controls the recitals. * * *"

To the same effect is the language contained in III American Law of Property, § 12.94, which reads as follows:

"* * * The granting clause is the main source for determining the estate or interest conveyed. Although resort may be had to other parts to ascertain its meaning or to supply information lacking therein, the omission of anything on the subject elsewhere in the deed is immaterial, and in the case of other clauses being inconsistent and irreconcilable, the granting clause will control. * * *"

These principles are further found in Porter v. Henderson, 203 Ala. 312, 82 So. 668; in re Brolasky's Estate, 309 Pa. 30, 163 A. 292, and in 26 C.J.S., Deeds, § 128, p. 429. In further support of the foregoing the appellees cite in their brief the following cases: Campbell v. Wells, 278 Ky. 209, 128 S.W.2d 592; Ontelaunee Orchards v. Rothermel, 139 Pa.Super. 44, 11 A.2d 543; Houghtaling v. Stoothoff, 170 Misc. 773, 12 N.Y.S.2d 207; Peterson v. City of New York, 235 App.Div. 41, 256 N.Y.S. 139; Baumert v. Malkin, 235 N.Y. 115, 139 N.E. 210; Armijo v. Town of Atrisco, 56 N.M. 2, 239 P.2d 535; Dunn v. Stratton, 160 Miss. 1, 133 So. 140; Murphy v. Jamison, Tex.Civ.App., 117 S.W.2d 127; Hartwick v. Heberling, 364 Ill. 523, 4 N.E.2d 965.

While this court will not speculate as to the reference to the 150 varas, we are convinced that the deed from Martinez to Manzanares conveyed the entire grant by such conveyance.

Coming now to the deed from Francisco A. Manzanares and wife to Thomas B. Catron, we find the following language in the deed:

"Witnesseth: that the said parties of the first part * * * have remised, released, sold, conveyed * * * by these presents do remise, release, sell, convey and quitclaim unto the said party of the second part, and to his heirs and assigns forever, all the right, title, interest, claim and demand whatsoever of the said parties of the first part of, in and to the following described real estate and property situate partly in the Counties of Rio Arriba and Taos in the Territory of New Mexico, and partly in the State of Colorado, bounded on the north by the Navajo River, on the east by the top of the range of mountains, on the south by the Nutrias River, and on the west by a north and south line passing through and including the mouth of the Laguna de los Caballos (Horse Lake), including said lake therein, being the same property and land granted to Manuel Martinez and others, confirmed by an Act of Congress dated June 21st, 1860 as Private Land Claim No. 3 and commonly known as the Tierra Amarilla Grant."

The above quotations would indicate that Manzanares, beyond any question intended to deed to Catron the entire Tierra Amarilla Land Grant. Inasmuch as we find no ambiguity on the face of the Manzanares to Catron deed and, in line with our opinion that the Martinez to Manzanares deed was a conveyance of the entire grant, suffice to say, at this point the title to the entire grant rests in Catron.

The transcript further reflects a deed, in 1881, from a number of people describing themselves as all of the legal heirs and representatives of Francisco Manzanares, deceased, to Thomas B. Catron, by which they convey the tract known as Tierra Amarilla Grant, and if there were such a gap in the chain of title from Francisco Manzanares to Catron, said gap would be completely eliminated. However, we hold that there is no such gap and that the title at this point rests in Thomas B. Catron. The appellants do not question the chain of title from this point on, therefore, we feel that this disposes of the second point of appellants.

For their next point, the appellants, under their various assignments of error argue that the appellees have not obtained any rights by adverse possession in and to the grazing lands involved in this action.

To illustrate the land involved in this action, and its shape, it can be best described as being in the shape of a standing cowboy boot, with the toe facing toward

the west. The extreme north end of the tract at the top of the leg of the boot, is extremely rough country, bounded by an impassable gorge dropping into a creek. The farming land and living quarters are on the toe of the boot near the Chama highway.

The testimony discloses that gentlemen by the names of Hall, Nossaman and Dudrow, obtained the property which is the subject of this suit in 1917 and that in 1918 a fence was commenced at the northwest corner of the toe of the boot and easterly around the sole of the boot to the southwest corner of the adjacent tract of land. There was a fence around this adjacent tract which filled in the arch of the boot. Testimony further reflects that this fencing continued across the heel of the boot and thence north along the back of the heel to a high hill, through approximately the eastern boundary ridge. It is further reflected that the land was occupied and farmed continuously until it was sold in 1930. From 1930 to 1950 a tenant of the owners lived upon the land, engaged in limited farming activities with the pasture lands grazing rights being leased, subleased, and used by various tenants. Considering the situation and the uses to which the various parts of the land were suited, this property was as thoroughly under adverse possession by appellees' predecessors as any range of its kind could be. This court has heretofore enumerated the requirements for an effective adverse possession and it would serve no useful purpose to go

into great detail concerning them. See Thurmond v. Espalin, 50 N.M. 109, 171 P.2d 325; Tietzel v. Southwestern Const. Co., 48 N.M. 567, 154 P.2d 238; Jackson v. Gallegos, 38 N.M. 211, 30 P.2d 719; Montoya v. Unknown Heirs of Vigil, 16 N.M. 349, 120 P. 676; Johnston v. City of Albuquerque, 12 N.M. 20, 79 P. 9; Gentile v. Kennedy, 8 N.M. 347, 45 P. 879.

Considering the lack of evidence as to occupation of the tract of land under discussion here and sometimes called the Mundy Tract, to the effect that appellants have actually ever occupied the Mundy Tract or have paid taxes thereon and considering the evidence of the appellees concerning their status as to this tract, we are constrained to say that there were no errors in the court's findings and conclusions with respect to adverse possession.

The trial court's findings of fact pertinent hereto are as follows:

"14. Defendants and their predecessors in title have had actual, open, uninterrupted, peaceable, notorious, exclusive, and adverse possession of the land and real estate herein involved under a claim and color of fee simple title and right to all thereof, continuing over a period of more than ten years prior to the filing of this action, and all with the actual or imputed knowledge of the plaintiffs and each of the plaintiffs.

"18. None of the plaintiffs, jointly or severally, now have nor at any ma-

terial time have they had, either actual or open or uninterrupted or peaceable or notorious or exclusive or adverse possession or use of any of the land and real estate herein involved or of any interest therein or of any right thereon or thereto for any period of ten years or more, nor any right, title or interest therein or thereto at any time.

"27. That at the time of the filing of this action, at the time of the filing of the counterclaim herein, at the time of trial and at all material times, defendants and counterclaimants have been in actual and exclusive possession of the land and real estate herein involved."

 The next point brought before this court by appellants is to the effect that appellees failed to establish a fee simple title because the undisputed evidence shows that appellants had acquired, either by grant or by prescription, rights to pasture and water livestock, cut wood and use roads on and over appellees' property and cite a number of assignments of error in support of this point, particularly, their assignments of error numbers 20, 21 and 25, which read as follows:

"No. 20. The Court erred in failing and refusing to adopt Plaintiffs' (appellants') Conclusion of Law No. 3, as follows, to-wit:

" '3. The right to pasture livestock and to cut wood on the lands of another is in the nature of a profit a prendre which may be acquired either through a grant or by prescription.'

"No. 21. The Court erred in failing and refusing to adopt Plaintiffs' (appellants') Conclusion of Law No. 4, as follows, to-wit:

" '4. Plaintiffs have acquired by grant or by prescription the right to pasture and water livestock, to cut wood and to use the roads on the premises described in the counterclaim.'

"No. 25. The Court erred in failing and refusing to adopt Plaintiffs' (appellants') Conclusion of Law No. 8, as follows, to-wit:

" '8. The hijuelas (Plaintiffs' Ex. 1, 2, 7, 9, 12 and 15 and numerous similar instruments) grant to the respective grantees therein the right to pasture and water livestock, to cut wood and to use the roads upon all the lands, suitable for such purposes, of the entire Tierra Amarilla Land Grant.' "

The testimony at the trial of this cause reflected that the use of the Mundy Tract for pasturage and livestock watering by appellants was not continuously but spasmodically, and access was gained through unfenced portions or through fenced portions at times when the fences were down or in a state of neglect, therefore, any such use would be permissive and not adverse to the title of the record owner. The above would also apply to the cutting of wood and use of the roads by appellants.

This court in Hester v. Sawyers, 41 N.M. 497, 71 P.2d 646, 651, 112 A.L.R. 536, said:

"A prescriptive right cannot grow out of a strictly permissive use, no matter how long the use. 1 Thompson on Real Property § 471."

and further in the same case through Justice Brice we find

"The use necessary to acquire title by prescription must be open, uninterrupted, peaceable, notorious, adverse, under a claim of right, and continue for a period of ten years with the knowledge or imputed knowledge of the owner."

In Tiffany on Real Property, 3d Ed. pages 414–415, "Adverse Possession of Land", the author states:

" * * * On the other hand, a merely occasional and sporadic use of the land, an occasional entry to cut timber or grass, or to appropriate other products or profits of the land, does not usually constitute actual possession. * * * "

Coupled with the facts of this case, the above would indicate the use made of the Mundy grant by appellants was not adverse. The claim by the appellants that they have acquired by grant or prescription, the right to cut wood, water livestock, pasturage and the use of roads was not shown to have been exclusive to the appellants but on the contrary was claimed by many others. The claim being in common with and similar to that of the general public in this area, the appellants certainly could not acquire a private easement unto themselves. All circumstances must be considered in determining the acts that would lead to a prescriptive right and we do not find such acts present in such force as to refer to a prescription.

The appellants, among other things, rely on certain "hijuelas" to establish a grant of certain rights in appellees' property. These "hijuelas" are of ancient origin. They originated in Spain many, many years ago and were described as papers or documents commonly given to parties entitled to distribution of an estate of a person deceased, containing an exact account of their distributive share. (See Velazquez's Spanish Dictionary, Chicago-New York, 1948)

It appears that the custom of the use of hijuelas evolved into New Mexico in the early years of our state's history and purported to grant to certain individuals small tracts of land for their use. In the instant case, these hijuelas do not purport to grant any of the lands in the Mundy Tract and do not mention them directly or indirectly. The other verbiage contained in these hijuelas do not, in our opinion, constitute a grant of any right to pasture, wood and water in the Mundy Tract. Further, there is a serious question concerning the acknowledgments on the hijuelas. Suffice to say, we do not feel constrained to find error in the findings of fact offered by the trial court in this regard.

■ The fifth point raised was to the effect that the appellants were entitled to a jury trial in connection with the questions of fact raised by the pleadings and in this proceeding, as a matter of right. Later in this opinion we have held there was no misjoinder, eliminating the jury trial question on that possibility. We have, in effect, held by this opinion, that the plaintiffs (appellants) were not in possession of the land involved herein and further that the appellees were in actual and exclusive possession of the land. This leads to the conclusion that the trial court had jurisdiction in equity to try the case without a jury. The findings of the trial court concerning the right of appellants to a trial by jury, and the findings eliminating such right are, in our opinion, founded on substantial evidence.

■ For the last point relied on by appellants, they offer that the counterclaim filed by the appellees constituted a misjoinder of causes of action and said counterclaim should have been dismissed or stricken and it should have proceeded as a suit in ejectment and not as a quiet title proceeding.

It is true that there are statutory provisions covering suits in ejectment. Since the advent of the Rules of Civil Procedure for District Courts of the State of New Mexico, we have been aware that the rules govern the procedure in said District Courts in all suits of a civil nature whether cognizable as cases at law or in equity, except in special statutory and summary proceedings where existing rules are inconsistent herewith.

Inasmuch as under our Code of Civil Procedure, L.1897, c. 73, carried forward into our present Rules of Civil Procedure, both legal and equitable remedies are administered by a single court as two complementary departments of our system of jurisprudence, Young v. Vail, 29 N.M. 324, 222 P. 912, 34 A.L.R. 980, we do not see that there has been any error in the instant case by a joinder of the causes of action referred to above, which in effect do not constitute a misjoinder.

We feel that the objection of appellants is more technical than substantial. Quintana v. Vigil, 46 N.M. 200, 125 P.2d 711.

The plaintiff had the right to bring this suit in ejectment and to request a prayer for relief and the defendant had the right to come in with the counterclaim for remedy in the nature of a suit to quiet title. This is in accordance with the familiar rule that when a court of chancery obtains jurisdiction of a cause, it will retain it to administer full relief. Young v. Vail, supra.

It will be noticed that the trial court in his memorandum of opinion concerning this matter was anxious to cut away the underbrush and get down to the basic issues of the case and indicated that if the rulings on the equitable issues were determined adversely to the defendants that a date

would be promptly set for trial for the remaining matters.

In the light of the foregoing, we find no substantial error and the judgment of the trial court will be affirmed.

COMPTON, C. J., and LUJAN, SADLER and McGHEE, JJ., concur.